TURRILL *et al.*, plaintiffs in error, *vs.* C. I. WALKER, defendant in error.

The jurisdiction of Circuit Courts in this State being limited as it respects original process, to the bounds of the County, service of a declaration at the commencement cannot be made upon a defendant out of the County.

Where it appears from the record that the Court has acquired no jurisdiction over the person of a defendant, he is not bound, as in case of mere irregularity, to move at the first opportunity, but he may take advantage of the defect at any time.

The omission to serve notice of rule to plead with the declaration, is an irregularity for which the proceedings will be set aside at any time; the defendant waives no right by failing to notice the defect within any specific time, for he has no notice of the purpose for which the declaration is served.

Error to Wayne Circuit.

The defendant in error filed, as the commencement of suit, a declaration against plaintiffs in error with the Clerk of the Circuit Court for the County of Wayne in assumpsit; he also entered the usual rule to plead. A copy of the declaration, and also a notice of the rule that plaintiffs in error were required to appear and plead to said declaration within twenty days after service of a copy of declaration, etc., was afterwards filed in the Circuit Court. On this copy of the

23

declaration was endorsed a return of the Sheriff of Lapeer County, Michigan, in the following words and figures:

*Lapeer County*, ss.:

I hereby certify, that I served the within declaration upon James Turrill and Henry Turrill, by delivering a true copy thereof, on the 24th day of January, 1855.

GEORGE W. ROOD, Sheriff.

The default of plaintiff in error for want of appearance and plea having been entered and made absolute, on the 2d day of April, 1855, a final judgment was rendered against plaintiffs in error for $1,187.98 damages and costs. The plaintiffs in error sued out this writ of error, assigning the following causes:

*First.* That it did not appear by the record and proceedings, that the declaration filed in the cause, as the commencement of the suit, was served upon the plaintiffs in error.

*Second.* That it did not appear in and by said record and proceedings, that any notice of the rule requiring said plaintiffs in error to plead within twenty days after service of a copy of said declaration was personally served on said plaintiffs in error, or either of them.

*Third.* That said judgement was rendered in said cause without the said plaintiffs being served with any writ, process, declaration and notice of said suit, and without their having in any way appeared or confessed said action.

*Howard, Bishop & Holbrook*, for plaintiffs in error.

*Walkers & Russell*, for defendant in error.

By the Court, WING, J.

The defendant insists that his proceedings in this case are authorized by the statutes of this State, and therefore there is no error in this case which the Court can notice.

The ninth Section of Chapter 89, Title 21, declares : "That the Circuit Courts, *within and for* their respective Counties, shall have and exercise jurisdiction of all civil actions and remedies at law and in equity, and all prosecutions in the name of the People of this State, for crimes, misdemeanors, offences and penalties, except in cases where exclusive jurisdiction shall be given to or possessed by some other Court or tribunal, in virtue of some statutory provision, or of the principles or usages of law, and shall have such appellate jurisdiction and powers as shall be given by law, and the said Courts shall also have and exercise, *within and for* their respective Counties, all the powers usually possessed and exercised by Courts of Record at the common law, and by the Courts of Chancery as heretofore established, for the full exercise of the jurisdiction hereby conferred."

This State was, at the adoption of the code of 1846, divided into four Circuits, and the Judges of the Supreme Court were required to perform the duties of Circuit Judges in the Counties composing the Circuit in which they resided. This code, except as amended by subsequent legislation, has remained in force until now. The Constitution of 1851 provided for a new organization of Courts, and required that the State should be divided into eight Circuits, and that eight Circuit Judges should be elected. The law by which jurisdiction was given to these Courts (*Sess. Laws of* 1851, *p.* 245, § 8), is the same as the section quoted from the code of 1846, with this addition at the close of the section : "Subject to such modifications as may be provided by the laws of this State." No essential alterations have been made in the laws regulating process, taking bail, and issuing executions, etc. Section 6, and down to and including Section 22, of Chapter 89, Title 22, provides for and regulates the commencement of suits by summons, capias ad respondendum, and declaration, but imposes no restriction as to the place in which they may be served. Chapter 106, Section 10, authorizes executions to

be sent into different Counties. This is amended by the law of 1847, *p.* 172, and confines it to successive executions. Chapter 96, Section 1, authorizes subpœnas for witnesses to issue to any part of the State. Title 24, Chapter 114, regulating proceedings in attachment, confines the service to the County by express words. Chapter 90, Title 21, Section 18, authorizes Sheriffs to execute process of Circuit Courts sitting in Chancery in any part of the State. Section 40 restricts such service to the County; this was altered by the law of 1847, which permits service of process from Courts of Chancery in any part of the State. There could have been no good reason for these several enactments authorizing service of process beyond the boundary of Counties, if the Court, from the nature of its organization, could have enforced it. Many of the provisions of this code were framed in reference to a *nisi prius* system, which was omitted by the Legislature, and the system of Circuit Courts was continued as before, but corresponding alterations were not made in all the chapters. This will account for the many inconsistencies to be met with in the different chapters.

If there was any doubt as to the true construction to be given to the Act conferring jurisdiction on Circuit Courts in the code of 1838, it would seem that none could be reasonably entertained in reference to the code of 1846, re-enacted in 1851, and which now governs and regulates the jurisdiction of Circuit Courts.

The Circuit Court for each county sits within and for the same, and is restricted to its local limits. Though their jurisdiction is general over the subject matter of suits, yet, in respect to persons and property, it cannot be exercised beyond the limits of the County. The Circuit Courts of the United States are held within and for each State or district. Judge Washington, in *Ex parte* Graham (3 *Washington C. Ct. R.*, 459), in speaking of the jurisdiction of those Courts, says : " This division and appointment of particular Courts

for each district necessarily confines the jurisdiction of the local tribunal within the bounds of the respective districts within which they are directed to be held; were it otherwise, and the Court of one district could send compulsory process into any other, so as to draw to it a jurisdiction over persons or things without the limits of the district, there would result a clashing of jurisdiction between the Courts, which could not easily be adjusted." In the Act of Congress there is an express provision restricting the service of original writs to the district; but a subsequent Act of Congress authorized subpœnas for witnesses to attend the Courts of one district, to run into any other district; and by another Act, writs of execution upon judgments in favor of the United States, in any of their Courts in one State, were authorized to run and be executed in any other State or Territory. Judge Washington says: "These several statutory provisions were enacted, not because they were supposed by Congress to be necessary in consequence of the statute confining the execution of original process to the district, but because the jurisdiction of the Courts was essentially confined by their organization within the limits of their respective districts; for it is to be observed that that section applies exclusively to original writs, and to the parties to those suits, and, therefore, imposed no restriction in respect to writs of execution and subpœnas for witnesses, which could render the provisions of those statutes at all necessary." He considers the enactment in relation to original process to have been from abundant caution, and that from the legislation in regard to executions and subpœnas, it was evident that Congress considered the process of those Courts was circumscribed to the limits of the district.

These several Acts of Congress are in striking analogy to laws of our State, to which we have referred, and we consider the views of Judge Washington as applicable in their scope

to the laws of our State as to the laws of Congress of which he was speaking.

Judge Story, in Picquet *vs.* Swan (5 *Mason's R.*, 41), in speaking of the decision of Judge Washington, says : "I follow with undoubted confidence the course of his reasoning." He then proceeds to remark upon the same acts, and we shall offer no apology for quoting largely from his opinion. He says : "The Courts of a State, however general may be their jurisdiction, are necessarily confined to the territorial limits of a State. Their process cannot be executed beyond those limits, and any attempt to act upon persons or things beyond them, would be deemed a usurpation of foreign sovereignty, not justified or acknowledged by the law of nations. Even the Court of King's Bench, in England, though a Court of general jurisdiction, never imagined that it could serve process in Scotland, Ireland or the Colonies, to compel an appearance or justify a judgment against persons residing therein at the commencement of the suit. This results from the general principle, that a Court created within and for a particular Territory, is bounded in the exercise of its powers by the limits of such Territory. It matters not whether it be a Kingdom, a State, a County, or other local district. If it be the former, it is necessarily bounded and limited by the sovereignty of the Government itself, which cannot be extra-territorial ; if the latter, then the judicial interpretation is, that the sovereign has chosen to assign this special limit, short of his general authority.

From these remarks of Judges Washington and Story, which we have thought to be applicable as well to the laws cited from our code as to the laws of Congress, it would seem that it must have been the intention of the Legislature to confine the exercise of jurisdiction by our Circuit Courts to Counties in which suits might be commenced, and that without some express statutory provision, no judgment could be rendered in those Courts against persons upon whom

process could not be personally served within the County, unless by consent. The clause in our statute, authorizing the Circuit Courts to exercise *within and for* their respective Counties, all the powers usually possessed and exercised by Courts of Record at the common law and in equity, is also subject to the same limitation. By the grant of this power, it is not intended to extend the jurisdiction given in the previous portion of this section, beyond the limits of the County. Its purpose is easily understood by a comparison of this clause with a similar clause in the laws regulating the jurisdiction of Justices of the Peace. (*Sess. L. of* 1856, *p.* 427, *Sec.* 4.)

The construction we have given is confirmed by the consideration that our present statute is but little variant from Section 4, of Title 1, Part 3, Chapter 3, of the Code of 1838, and that, since the adoption of that code, but one case (before this) has been brought to the knowledge of this Court, in which an effort has been made to obtain jurisdiction of a person by serving process upon him in a County other than that in which the suit was commenced, and that case, as we are informed, is still pending. The understanding of the profession has been, that original process could not be served (at least in ordinary cases) beyond the limits of a County.

But it is claimed, that if the jurisdiction of the Court was limited to the bounds of Wayne County, the service of the declaration out of the County was a defect of service, and is a mere irregularity, and should have been taken advantage of at the first opportunity, and before the plaintiff below had taken any further steps.

An irregularity is defined in 1 Tidd's Pr., 514, to be: "The want of adherence to some prescribed rule or mode of proceeding; and it consists either in omiting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unreasonable manner. Thus the

want of notice is an irregularity, whether it be to process or declaration. The class of cases cited by defendant relate to cases similar to those cited by Tidd, in illustration of his definition. In all such cases, there can be no dispute but that if a defendant will take advantage of the irregularity, he must do so at the earliest period. There is another class of cases decided in the King's Bench and Common Pleas, in which process was served by a Sheriff beyond the bounds of his County, on the confines of another County, or the process was directed to a wrong County, or served upon a person exempt from such service, either because of some personal privilege, or because he was in a place within a County exempt from the service of process by a Sheriff of the County. ,Of this class are: 1 Marsh, 550; 1 Chit.'s R., 333; 7 Taunt.; 1 Moore, 299; 4 Maule & Sel., 412; 1 Man. & Ry., 320. In some of these cases the defendant had said or done what was deemed a waiver of the irregularity, but in respect to most of them, the true ground upon which they were sustained was, that the defendant had notice of the proceedings, and of what was required of him, and the Courts from which the process emanated were Courts of general jurisdiction extending throughout the realm, and had jurisdiction over all persons, unless they were *exempt* from suit by some law or usage; and in such case, it was held they must show their exemption by appearing to take advantage of it in due time, or they were deemed to have waived it; it was a personal privilege which they might waive, and which they did waive, by not appearing and objecting in due time. (See 13 *Ill. R.*, *Kennedy and wife* vs. *Green*, 433). But it is not to be inferred from those cases that the Courts of King's Bench would sustain the service of process upon a person in Scotland, or any other place beyond the jurisdiction of the Court, or that a judgment could be sustained upon such service, and the defendant be precluded from having it reversed on error. This is expressly denied in Buchanan *vs.*

Baker (9 *East.*, 192). In the case at bar, the plaintiffs were as much beyond the reach of process from the Circuit Court of Wayne County, as if they had been in Canada. They were not only exempt from the service of civil process emanating from that Court in any form of action, and consequently they were not bound to appear and plead their privilege in abatement.

The Supreme Court of the United States decided, in the case of Rhode Island *vs.* Massachusetts (12 *Peters' R.*, 657), " That no Court can, in the ordinary administration of justice in common law proceedings, exercise jurisdiction over a party, unless he shall voluntarily appear, or is found within the jurisdiction of the Court, so as to be served with process. Such process cannot reach the party beyond the territorial jurisdiction of the Court ; this is a personal privilege, which may be waived at the option of the party." Nor would it vary the legal result in this case that the plaintiffs had actual notice of this action, for they are not bound to appear. (5 *Mason R.*, 43.)

There can be no presumption in this case in favor of the jurisdiction of the Circuit Court, because it is a Court of general jurisdiction, or at the least, not an inferior Court in the sense of the common law. The question is not here, whether, if the facts to give jurisdiction do no appear on the record, the proceeding would be irregular, but whether, when it does appear on the record that the Court did not acquire jurisdiction, the judgment is not erroneous.

The record says afterwards, to wit : On the 12th day of February, 1855, there was filed in the office of the Clerk of said County a copy of said declaration and notice of said rule to plead, with a return of the Sheriff endorsed thereon, which return is in the words and figures following, to wit : Then follows the return of the Sheriff of Lapeer County, as he styles himself, in which he says, "Served the within *declaration* upon James Turrill and

24

Henry Turrill, by delivering to them a true copy thereof, on the 24th day of January, 1855 ; from which it appears, not only that the service was irregular, as being out of the County of Wayne where the declaration was filed, but only a copy of the declaration was served on plaintiffs without any notice of the rule to plead, or of the purpose in serving it upon them, or that a suit was pending, or anything in relation to it. It must be presumed, and indeed it appears evident, that this service of declaration was the means, and the only means, which defendant made use of to bring plaintiffs into Court to answer to his declaration. There was no notice of the purpose for which it was served, or of what defendant intended further to do in respect to it or the plaintiffs. Even, according to the English practice, the plaintiffs would not waive any rights by failing to notice it. The rule is thus stated in Fletcher *vs.* Wells (6 *Taunt.*, 191) : " The counsel for the plaintiffs misconceive the rule. It is, that if there has been irregularity, the party suffering it is not bound to move to set it aside within any specific time, for he may reasonably suppose that the opposite party will discover his mistake, and abandon his defective proceedings ; but if the party guilty of the irregularity takes one step more, which shows that he does not intend to abandon his process, then it is incumbent on the party complaining to apply immediately to set it aside, for if he takes a step himself, or permits the other party to take a further step, it is a waiver of the irregularity. Here the defendant being served with defective process, was not bound to move to set it aside, until after the plaintiff had shown that he meant to act upon it. The plaintiff gave notice of declaration, upon which the defendant ought immediately to have applied, but he lies by until the plaintiff has executed his writ of inquiry, and, therefore, he has hereby waived the irregularity." The course of proceedings in the King's Bench and Common Pleas would have required notice of subsequent steps after the service of

process; and in this case, if the rule to plead had been served, there might have been some ground to claim, if there was no other defect in the case, that the plaintiffs had waived their right to object or bring error by not appearing and pleading in abatement, or moving to quash for irregularity. Upon both grounds we think the proceedings were erroneous, and should be reversed.

Judgment affirmed.

Present, WING, GREEN, PRATT, JOHNSON, COPELAND, DOUGLASS, J. J.

MARTIN, J., did not sit in this case.