The Hon. George R. Milburn, ⎱ Associate Justices.
The Hon. William L. Holloway, ⎰

STATE ex rel. POOL et al., Relators, v. DISTRICT COURT OF THE NINTH JUDICIAL DISTRICT et al., Respondents.

(No. 2,298.)

(Submitted April 12, 1906. Decided June 4, 1906.)

*Certiorari—Contempt—Water Rights—Injunction—Jurisdiction—Judicial Districts.*

Certiorari—Contempt—Water Rights—Injunction—Judicial Districts—Jurisdiction.

1. Certain water rights were adjudicated between the various claimants and an injunction issued restraining all parties to the action from interfering with each other's rights, in Meagher county, attached to the sixth judicial district. Subsequently that part of this county wherein the waters in controversy in that cause were situate was added to Broadwater county, a portion of the ninth judicial district. For a violation of the injunctive portion of the decree above mentioned the relators were punished for contempt by the district court of the ninth district. *Held,* on .*certiorari,* that the court had jurisdiction of the contempt proceedings and could do all things to enforce the decree that its predecessor, the district court of the sixth district, might have done had the change in districts not been made.

(258)

Contempt—Water Rights—Injunction—Parties.

2. *Quaere:* May a person, who was not a party to a water right suit in which an injunction was issued, but who occupies the relation of a privy to one of the parties whose rights were adjudicated, be held to obey the mandate of the court which runs only to the parties directly interested and not to their successors and assigns, and where he may be unaware of the existence of such injunction?

Injunction—Water Rights—Contempt—Parties.

3. Where a decree, entered in a suit to determine water rights, in terms only enjoins the parties directly interested from interfering with the rights of each other as adjusted between them, a successor in interest to the rights of one of the parties, who at one time asserted the benefits of the injunctive feature of the decree as against the other parties to it, and again willfully and knowingly disregarded the provisions of it, made himself, by such conduct, to all intents and purposes a party to it and may be held liable in contempt for a violation of it.

ORIGINAL application by the state, on the relation of G. E. Pool and another, for writ of review to the ninth judicial district court of the state, in and for the county of Broadwater, and the Honorable W. R. C. Stewart, judge thereof, to annul its judgment convicting relators of contempt. Application denied.

*Mr. C. B. Nolan,* for Relators.

*Messrs. Wallace & Donnelly,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On August 26, 1890, in a suit pending in the district court of the sixth judicial district of the state of Montana, in and for the county of Meagher, entitled *"John Dunlavey et al. v. James Grubb et al.,"* after a trial there was made and entered a decree adjudicating and settling the rights of the parties, plaintiff and defendant, to the use of the water flowing in Confederate creek, in said county. It was therein adjudicated that John Dunlavey, the plaintiff, was entitled to the use of one hundred inches, statutory measurement, appropriated in March, 1866, and one hundred inches appropriated on May 1, 1866. It was also adjudicated that Walter R. Morgan was entitled to the use

of sixty-five inches of said water, appropriated on May 2, 1866, and one hundred and twenty-five inches appropriated in 1872, and that A. Estes, or his successor, was entitled to sixty-five inches as of the date of May 2, 1866. At the time the action was brought, Meagher county was attached to the fourth judicial district. When the territory was admitted into the Union as a state, Meagher county was attached to the sixth judicial district. By an Act of the legislature, approved February 9, 1897 (Sess. Laws, 1897, p. 45), the county of Broadwater was created, and under the provisions of that Act all that part of Meagher county wherein the water in controversy in the cause mentioned is situate was included in the county of Broadwater. That county was by the terms of the Act attached to the ninth judicial district. The decree fixes the dates of appropriation and the amounts of the various water rights, and directs that the parties plaintiff and defendant shall use them according to the relative priorities fixed therein. It contains the following provision: "And it is further ordered, adjudged and decreed that the parties appearing herein be, and they are, and each of them is, hereby forever restrained and enjoined from interfering with the prior right of any party hereto as fixed by this decree."

On November 13, 1905, the plaintiff, John Dunlavey, filed in the district court of the ninth judicial district an affidavit setting forth, in substance, the following: That he is familiar with Confederate creek in Broadwater county, Montana, and the various irrigation ditches leading therefrom, as well as with that certain decree finally determining the rights in and to the water of said creek, rendered August 26, 1890, in that certain cause in the district court of the sixth judicial district of Montana, in and for Meagher county, wherein John Dunlavey and others were plaintiffs and James Grubb and others were defendants; that by the terms of said decree the parties appearing therein, including Walter R. Morgan and A. Estes, were forever restrained and enjoined from interfering with the prior rights of any other party as fixed by said decree; that at all the times during the year 1905 Dora Pool was and since has been the suc-

cessor in interest as grantee of Walter R. Morgan in the water rights and water of Confederate creek awarded by said decree, in a total of one hundred and ninety inches; that J. D. Doggett was, and since that time has been, the successor in interest of A. Estes in the water of said creek, to the extent of sixty-five inches awarded by the decree, and that at all of said time G. E. Pool was the husband of Dora Pool and was using water from the creek as hereinafter stated, either as lessee and agent or successor in interest of Dora Pool, and that at all the times mentioned Dora Pool, G. E. Pool, and J. D. Doggett knew of said decree and the terms thereof, having sought and enjoyed the use of the water awarded thereby, and having sought and enjoyed benefits thereunder; that each of the rights of Estes and Morgan, to which the Pools and Doggett had succeeded, are subsequent to the rights of Dunlavey, as set forth in the decree mentioned; that under his said right Dunlavey is entitled to two hundred inches of the water of the creek, when necessary for the irrigation of his crops, to the exclusion of the rights of the Pools and Doggett; that at all the times during August and September, 1905, and ever since, the water so decreed to affiant was and is necessary for his use for the purpose of irrigating his growing crops, for which said water was decreed as aforesaid; that at divers dates in August and September, 1905, and since, particularly on August 31 and September 4, 1905, Dora Pool, G. E. Pool, and J. D. Doggett did divert, use and turn away from affiant's use a large quantity of the water of said creek to which affiant was then and there entitled under the decree; that they turned the same out of the natural channel at points above the heads of affiant's irrigating ditches and failed and refused to turn down said water to affiant; that they wrongfully and unlawfully withheld such water to the extent of one hundred inches, measured according to said decree, from the affiant; and that, after being notified of the need of the water, they refused to turn it or any part thereof back into the channel of the creek, when requested so to do by affiant and his agent,

all to the great damage and injury of affiant's crops, which were thereby deprived of the water aforesaid.

Upon the filing of this affidavit the Honorable W. R. C. Stewart, judge of the district court of the ninth judicial district in and for the county of Broadwater, issued a citation to G. E. Pool and J. D. Doggett, citing them to appear and show cause why they should not be adjudged in contempt and pnnished for the violation of the injunction contained in said decree. Pool and Doggett appeared in obedience to the order of citation, and thereupon, after hearing of the evidence, the court found both guilty of contempt, and on March 9, 1906, entered its judgment adjudging that each should pay a fine of one hundred and fifty dollars, or, in default thereof, should be committed to jail until the fine be satisfied. Application was thereupon made to this court for a writ of review to annul the judgment of conviction. An order was issued directing the district court and its judge to show cause why the writ should not be allowed. On the day fixed for the hearing, the said court and judge objected to the allowance of the writ, on the ground that the affidavit does not state facts sufficient to make a case authorizing this court to issue the writ.

An incidental question presented by counsel for relators is whether, since the action was determined and the injunction issued by the district court of the sixth district, sitting in Meagher county, the district court of the ninth district, sitting in Broadwater county, has jurisdiction to enforce the decree, the latter county at the time of the rendition of the decree being included in part in the former while attached to the sixth district. This question seems hardly to deserve serious consideration.

The Act creating Broadwater county attached it to the ninth district for judicial purposes. If this provision means anything, it means that the court of the ninth district is clothed with jurisdiction for all purposes, so that it can do all that its predecessor might have done had no change been made. In order to meet the requirements of this changed condition, the

twelfth section of the Act (Session Laws, 1897, p. 48) made it the duty of the board of commissioners of the new county to obtain certified transcripts of all records of the counties (Meagher and Jefferson), portions of which were included therein, affecting property situate within the county, and have them filed with the clerk of the county. This was done for the purpose of supplying the new county with records so far as they affect the title to property. These records are declared by this section to be admissible in evidence in all courts in the state, and entitled to like faith and credit as the original records. Thus the intention was and is manifested that the transcribed records should perform for the new county the same office as the original records of Meagher and Jefferson counties, and that the court of the ninth district should have the same power to enforce judgments evidenced by them as the court sitting in Meagher county.

The legislature has power to create new counties, and, in do- ing so, to divide those already created. It also has power to change the judicial districts in the state. This implies the power to provide for the preservation of liens and the efficacy of judg- ments theretofore rendered in the courts as the counties and districts were severally constituted at the time of their rendition. The fact that a county, or a part of it, may have been at one time included in one district and at another time in another, does not affect the validity of any judgment or the jurisdiction of the district court of the particular district. Especially so, when the purpose of the legislature is manifested by express provisions of law to prevent the very confusion and uncertainty which counsel insists must result from the division of one or more counties in the creation of a new one.

Now, contempts are criminal in their nature (*State ex rel.*˙ *Flynn* v. *District Court*, 24 Mont. 33, 60 Pac. 493), and must be tried in the jurisdiction—that is, the county—where com- mitted. If the contention of counsel should be sustained, the result would be that no decree rendered by the district court of the sixth district, for Meagher ˙county, could be enforced by

the district court of the ninth district, for Broadwater county. Nor would the court sitting in the former have jurisdiction, because the real estate with reference to which adjudication was made is situate in Broadwater county. Such decrees would be worthless except as evidence to establish an estoppel under an allegation of *res adjudicata*.

The principal questions submitted for decision are two: First, whether the relators, not being parties to the action in which the rights to the use of the water of Confederate creek were adjudicated and the perpetual injunction was issued, and who are not named therein, became subject to its provisions by becoming privies in estate to some of the parties defendant expressly included; and, if not, secondly, whether the other facts appearing in the affidavit filed in the contempt proceeding present a case of willful interference with the operation of the decree after knowledge of its existence.

That the relators are privies in estate to Estes and Morgan is clear. (2 Bouvier's Institutes, sec. 3102.) That, as such, they are estopped to deny or controvert Dunlavey's superior right is equally clear, because they are identified with their predecessors in interest. (Id.; Code Civ. Proc., sec. 3196; *Campbell* v. *Rankin*, 2 Mont. 363; *Hunt* v. *Haven*, 52 N. H. 162; 1 Freeman on Judgments, 2d ed., sec. 162.) In an action brought by Dunlavey, or by them, to settle the rights they or any of the other parties claim, they would be, so far as now appears, estopped to controvert or question any of the rights already adjudicated.

Are the relators, then, bound by the injunctive feature of the decree? Generally speaking, an injunction operates only *in personam* and affects only the parties to the action. Therefore no one can be punished for contempt for a violation of it except parties having notice of it. To this general rule, however, there are several exceptions. As was said in *Re Lennon*, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110: "To render a person amenable to an injunction it is neither necessary that he should have been a party to the suit in which the injunction

was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice.'' Some of the exceptions are where the injunction runs against the agents, servants and employees or grantees and the successors of a party, or where third persons act in collusion with a party in violation of the injunction. (2 High on Injunction, sec. 1440a; *Dadirrian* v. *Gullian* (C. C.), 79 Fed. 784; *Rigas* v. *Livingston*, 178 N. Y. 20, 70 N. E. 107; *In re Reese* (C. C.), 98 Fed. 984; *Buhlman* v. *Humphrey*, 86 Iowa, 597, 53 N. E. 318; *Boyd* v. *State*, 19 Neb. 128, 26 N. W. 925; *Shelby* v. *Burtis*, 18 Tex. 644.)

In the case of *Ahlers* v. *Thomas*, 24 Nev. 407, 77 Am. St. Rep. 820, 56 Pac. 93, the supreme court of Nevada recognizes another exception. In that case the contemnor became the grantee of one of the defendants after decree in an action brought to adjudicate the right to the use of water flowing in a certain stream. The decree was entered by default and embodied an injunctive feature restraining the defendants, their grantees, etc., from interfering with the plaintiff's rights. It was held that the decree was binding as to the contemnor, and, though it is not so stated, the ground of the holding appears to have been solely that he was a grantee, the theory of the court evidently being that since the decree was binding as to the rights involved, its mandate directed to the defendants was also binding on the defendants' grantees, whether they were mentioned therein or not. This exception is also recognized by the supreme court of Illinois in *Safford* v. *People*, 85 Ill. 558.

The same exception, slightly modified, seems to be recognized in the case of *Rigas* v. *Livingston, supra,* in which the court uses this language: ''It is true that persons not parties to the action may be bound by an injunction if they have knowledge of it, provided they are servants or agents of the defendants, or act in collusion or combination with them. * * * Authorities illustrating the rule might be cited to an indefinite extent, but the underlying principle in all cases of this class, on which is founded the power of the court to punish for the violation of its mandate persons not parties to the action, is that the parties

so punished were acting either as the agents or servants of the defendants, or in combination or collusion with them, or in assertion of their rights or claims.''

The last clause of this quotation implies that, where a third party asserts the right or claim of one of the parties to the injunction, he will be held to be bound by the terms of the injunction. The rule here stated excludes a privy who, with knowledge of the injunction, asserts rights under it. It is not necessary, then, to go to the extent of either of the cases of *Ahlers* v. *Thomas* or *Safford* v. *People, supra,* in order to reach the conclusion that the relators are not entitled to the writ prayed for herein.

For present purposes it may be conceded that mere privity in estate is not sufficient to warrant the holding that the party occupying the relation of a privy who was not a party to the suit at the time of the rendition of the judgment, must be held to obey the mandate of the injunction; for it is possible for a case to arise in which the privy has no knowledge whatever of the injunction. It does not seem that under such circumstances he should, upon principle, be punished; for while the grantee, if expressly mentioned, may well be held to be subject to the mandate, yet, if not mentioned, it is questionable whether he should be so held.

In the case of *Ahlers* v. *Thomas* the decree ran against the defendant and their grantees. Here the words of the decree include only the defendants. If the relators should be held to come within the mandate of the decree on the ground of their privity alone, the punishment inflicted would be for violating an order of which they might have had no knowledge, even presumptively, since the decree does not in terms include them.

But it appears that the relators are not only privies by purchase from Estes and Morgan, but from time to time prior to the acts complained of as a violation of the injunction, they claimed the benefit of the decree by petitioning the court to appoint a water commissioner to administer the various rights adjudicated therein, under the Act of the legislature authorizing

such an appointment. (Session Laws, 1905, p. 144.) Under this Act the appointment of a commissioner to administer the rights could only be made upon petition of at least twenty-five per cent of the owners of water rights affected by the decree. It is conceded here that the relators joined in the procurement of such appointment, and that they enjoyed the benefits of the decree as administered by the commissioner, but afterward, concluding, no doubt, that as they were not specifically mentioned therein, they could not be held bound, they refused to respect it. They are therefore found in the attitude at one time not only of privies in estate of their grantors, but asserting the benefit of the injunctive feature of the decree as against the other parties to it who are with the plaintiffs mutually bound by it, and at another time willfully and knowingly disregarding the provisions of it. This brings the case clearly within the rule of the exception stated in *Rigas* v. *Livingston, supra,* and we think that the court properly punished them for their conduct; for, having availed themselves of the provisions of the decree as if they were bound by it, and having claimed benefits thereunder, they may not now be heard to say that they could afterward still claim the rights awarded by it, but refuse to obey its mandate. While not mentioned in the decree, either specifically or by general reference, they have, to all intents and purposes, made themselves parties to it by asserting rights under it, and they must be held to obey it.

The result is that the order to show cause must be set aside, and the application for the writ denied. It is so ordered.

*Writ denied.*

Mr. Justice Milburn and Mr. Justice Holloway, concur.