STATE EX REL. SWANSON ET AL., RELATORS, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,842.)

(Submitted July 1, 1938. Decided July 28, 1938.)

[82 Pac. (2d) 779.]

*Mr. Harold K. Anderson* and *Mr. Floyd O. Small,* for Relators, submitted a brief, and argued the cause orally.

*Mr. Lew. L. Callaway,* for Respondents, submitted an original and a reply brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

In June, 1911, the district court of Cascade county, in an action entitled *McIver* v. *Campbell et al.,* adjudicated the water rights in the waters of Sun River and its tributaries. That decree adjudicated rights in Lewis and Clark, Teton and Cascade counties, including the rights in the waters of Willow Creek and Little Willow Creek and their tributaries. Willow Creek and Little Willow Creek and their tributaries are all situated wholly in Lewis and Clark county. A copy of that decree was filed in the office of the clerk of the district court at Helena, Lewis and Clark county, and thereafter the district court of that county appointed a water commissioner to admeasure and distribute the waters of Willow Creek and Little Willow Creek and their tributaries for 1938. Thereafter interested parties filed a petition to revoke the appointment of the commissioner for want of jurisdiction in the court to make the appointment. After hearing, the court sustained the contention of those petitioners and revoked the order appointing the commissioner. The relators thereupon invoked the supervisory powers of this court to review the action of the district court

of Lewis and Clark county in revoking the order making the appointment. It is conceded that the revocation was effected solely because the court was of the view that the district court of Lewis and Clark county was without jurisdiction to appoint the water commissioner.

The sole question presented is whether the district court of Lewis and Clark county had the jurisdiction to make the order appointing a water commissioner to admeasure and distribute the waters of Willow Creek, Little Willow Creek and their tributaries, it being the contention of respondents here that the district court of Cascade county alone has jurisdiction to make such an appointment.

The statutes bearing upon the subject are sections 7136 et seq., Revised Codes of 1935. Section 7136 in part provides: "Whenever the rights of persons to use the waters of any stream, ditch or extension of ditch, water course, spring, lake, reservoir, or other source of supply have been determined by a decree or decrees of a court of competent jurisdiction, it shall be the duty of the judge of the district court having jurisdiction of the subject matter, upon the application of the owners of at least ten per cent. of the water rights affected by the decree or decrees, in the exercise of his discretion, to appoint one or more commissioners, who shall have authority to admeasure and distribute to the parties bound by the decree or decrees the waters to which they are entitled, according to their rights as fixed by such decree or decrees."

Sun River and its tributaries flowing, as they do, in three counties, viz., Lewis and Clark, Teton and Cascade, the district court of any one of those counties had jurisdiction to adjudicate the water rights of the whole watershed system. (*Whitcomb* v. *Murphy,* 94 Mont. 562, 23 Pac. (2d) 980.) But of the three, the court which first acquired jurisdiction—here the district court of Cascade county—retains jurisdiction for the purpose of disposing of the whole controversy, and no court of co-ordinate power is at liberty to interfere with its action. (15 C. J. 1134.)

When section 7136 empowers the court "having jurisdiction of the subject matter" to appoint one or more water commissioners, it refers to the court that has acquired jurisdiction to adjudicate the water rights. The appointment of a water commissioner to distribute the waters is a method devised to carry the decree into effect. (*Montezuma Canal Co.* v. *Smithville Canal Co.*, 218 U. S. 371, 31 Sup. Ct. 67, 54 L. Ed. 1074; *State ex rel. Flynn* v. *District Court*, 33 Mont. 115, 82 Pac. 450.)

Counsel for relators contend that even though the district court of Cascade county be conceded to have exclusive jurisdiction to adjudicate the rights of all parties to the waters of Sun River and its tributaries, including Willow Creek and Little Willow Creek, it does not follow that that court has exclusive jurisdiction to enforce the decree. With this contention we do not agree. This question was presented to the supreme court of Colorado, in *Weiland* v. *Reorganized Catlin Con. Canal Co.*, 61 Colo. 125, 156 Pac. 596. There the water rights were adjudicated by the district court of Bent county. An action was brought in Otero county to enjoin the water commissioner and the state engineer from interfering with certain rights claimed by plaintiff in that action. The court, after reviewing its statutes, stated:

"From these several provisions and authorities cited, it appears that the courts having jurisdiction to adjudicate priorities is definitely fixed; that there is to be but one decree by one court in a given district; and that it is the duty of the water officials to distribute decree priorities in accordance with such decrees.

"The action was against the water officials alone. Confessedly its purpose is to require them to distribute the 22 feet of water represented by the transfer decree in accordance with its terms. That decree was rendered by the district court of Bent county. Its jurisdiction for this purpose was exclusive. According to the averments of the complaint, the issue tendered is whether the defendants have or have not distributed the water involved as by the terms of the decree changing the point of diversion

the plaintiff is entitled to receive it. Which court is vested with authority to determine this question?

"If the district court of Otero county has jurisdiction for this purpose, it must, as it did, construe the decree of the Bent county district court, and do, as it did, render judgment directing the water officials to distribute the priority fixed by that decree in harmony with such construction. Whether such construction and judgment are right or wrong is immaterial. The question is: When a court vested with jurisdiction to adjudicate water rights has exercised that authority and entered a decree, can another court of co-ordinate jurisdiction entertain a case the object of which is to determine whether the water officials have complied with its terms in the distribution of water? The statutes designate the district court vested with exclusive jurisdiction to adjudicate priorities to the use of water for irrigation in a water district. When jurisdiction for that purpose has attached and a decree is entered, the statutes on that subject necessarily inhibit any other court of co-ordinate jurisdiction from modifying, reviewing, or construing such decree, otherwise there could be, in effect, more than one decree by different courts affecting the same priority to the use of water in the same water district, which it is the object of the statutes to avoid. Copies of all adjudication and transfer decrees are placed in the hands of water officials to guide them in the distribution of water. In a sense these copies are their warrants to execute the decrees which they embrace. The enforcement of a decree establishing a priority to the use of water is of the very essence of adjudication proceedings. From its nature and object the process of enforcing it is continuous, and must therefore remain the continuing function of the court entering it. Consequently, if a question arises between the owner of a priority fixed by a decree and water officials charged with the duty of distributing water under it, with respect to its meaning or effect, it must be determined by the court entering the decree, and not by any other court of co-ordinate jurisdiction.

"To conclude that any other court than the original one could entertain jurisdiction in such circumstances would lead to hope-

less confusion and conflict in jurisdiction, place the water officials in the position of not knowing which of two decrees or orders they should obey, and be contrary to the spirit as well as the letter of the statutes relating to the adjudication of water rights. Aside from this, the general rule applicable is that when a court assumes jurisdiction of a proceeding, which it is authorized to entertain, its jurisdiction is exclusive and extends to the enforcement of its decree in so far as the authority of other courts of the same jurisdiction may be involved. (*Louden Canal Co.* v. *Handy Ditch Co.,* supra, [22 Colo. 102, 43 Pac. 535]; Bailey on Jurisdiction, sec. 77; Works on Courts and their Jurisdiction, 69.) We therefore conclude that the district court of Otero county was without jurisdiction to entertain the cause, and the demurrer to the complaint challenging its jurisdiction should have been sustained.''

The same conclusion was reached in *Love* v. *Redden,* 61 Colo. 133, 156 Pac. 599; in *Farmers' Ditch & Reservoir Co.* v. *Boyd Lake etc. Co.,* 66 Colo. 29, 178 Pac. 561, and in *Hazard* v. *Joseph W. Bowles Reservoir Co.,* 87 Colo. 364, 287 Pac. 854. Of course, the rule does not apply to independent rights not adjudicated by the decree in the water right action. (*Faden* v. *Hubbell,* 93 Colo. 358, 28 Pac. (2d) 247; *Bijou Irr. District* v. *Weldon Valley Ditch Co.,* 67 Colo. 336, 184 Pac. 382.) While our statutes are not the same as the Colorado statutes, we think the conclusion announced by the Colorado court in the *Weiland Case* has application under our statutes.

Section 7136 contemplates but one court having jurisdiction of a water right suit. Where, as here, the rights have their source and are used in more than one county, the district court of the county which first acquires jurisdiction is the court that has the power to appoint water commissioners. Relators contend that such a construction of our statutes would make it impossible to punish for contempt for the violation of the decree of the district court of Cascade county when the contempt was committed in Lewis and Clark county. We do not agree with that contention in this respect. Contempts, being criminal in their nature, must be tried in the county where committed.

If there be contempt of the Cascade county decree in Lewis and Clark county, the courts of the latter county may punish therefor. (*State ex rel. Pool* v. *District Court,* 34 Mont. 258, 86 Pac. 798.) Such a proceeding is to vindicate the court's authority and dignity, and does not adjudicate or affect rights of the parties in the water right suit. (*State ex rel. Flynn* v. *District Court,* 24 Mont. 33, 60 Pac. 493.)

The next contention of relators is that, since under section 7143 a water commissioner is vested with the same powers as a sheriff or constable to arrest any and all persons interfering with the distribution of waters, it is unreasonable to suppose that the legislature intended to authorize the district court of Cascade county to appoint a commissioner whose duties are confined to Lewis and Clark county. We see nothing unreasonable or illegal in such a situation. Persons who comply with the decree will not be molested by such a peace officer. Those who fail to comply with it will not be heard to say that their arrest should be accomplished by some other officer.

The next contention is that, since under sections 7140, 7145, 7147, 7148 and 7149 and other sections of the statute the court appointing a water commissioner is empowered to assess costs and expenses against the land benefited, and that the assessment is given the force and effect of a judgment against the person to whom the water was distributed with the right to issue execution, it is not to be supposed that the legislature intended to empower the court of one county to make such an assessment operative as a lien upon lands situated in another county. There is no more valid objection to such provisions than to the provision that a judgment rendered in one county is a lien upon real estate of the debtor in another county.

The legislature has the right to empower the district court of Cascade county to appoint a water commissioner for Lewis and Clark county under the facts here, and to make the costs and expenses an assessment against the lands benefited. The landowner, in seeking to have water rights adjudicated to him, takes those rights burdened with the conditions imposed by the

legislature, one of which is that he must share in the cost of enforcing the decree. In this respect the situation is analogous to that arising when an irrigation district is created which may embrace lands in more than one county. (Sec. 7167, Rev. Codes.) The court of one county appoints commissioners which, in some cases, may embrace a division of the district situated in another county. (Secs. 7169, 7170.) While each commissioner does not act separately but as a member of the board (secs. 7171, 7172), it is entirely possible that a majority of the members might represent divisions of the district situated in counties other than that of the court making the appointment. The board also has authority to assess the cost of certain installations against the lands affected thereby. (Sec. 7207.5.)

Relators contend that our conclusion here necessarily conflicts with our holding in *Whitcomb* v. *Murphy*, supra, for there we held that the water commissioner appointed in Lewis and Clark county should follow the Cascade county decree to the extent that it adjudicated water rights not involved in the Lewis and Clark decree awarding the rights of the south fork of Sun River, thus recognizing the right of the district court of Lewis and Clark county to appoint a water commissioner. In that case the question here being considered was not raised or presented. Moreover, in that case the district court of Lewis and Clark county had by decree adjudicated part of the rights of the south fork of Sun River, and the water commissioner was appointed by that court to enforce its own decree and not that of another court. Here there is no decree by the district court of Lewis and Clark county covering any of the rights of Willow Creek or Little Willow Creek or their tributaries. A commissioner admeasuring and distributing the waters of Willow Creek and Little Willow Creek, by whatever court appointed, has but one decree to follow and that is the decree of the district court of Cascade county, and it is our view that that court alone has jurisdiction to appoint a water commissioner.

The respondent court properly annulled the order appointing a water commissioner to distribute waters according to the

decree of the district court of Cascade county, and the writ applied for is denied and the proceeding dismissed.

MR. CHIEF JUSTICE GODDARD and ASSOCIATE JUSTICES STEWART and ANDERSON concur.

MR. JUSTICE MORRIS:

I dissent. There is a legislative omission or a defect in the legislative procedure provided, whichever you choose to call it, relative to the enforcement of a decree of a district court in a water right action where the decree is made in one jurisdiction and service of process becomes necessary in another. The statutes do not specifically authorize sheriffs and constables to serve process or make arrests outside of their respective bailiwicks, and section 7143, Revised Codes, vests in water commissioners only such powers as are exercised by sheriffs and constables. The powers of executive officers must be expressly set down in the statutes or clearly implied.

Section 7136 does not either expressly or by clear implication empower the district judge to appoint a water commissioner to administer appropriated waters or serve his processes outside the jurisdiction of the county where he sits when making his decree. Section 11, Article VIII of the Constitution, provides that the processes of the district courts shall reach to every part of the state, but the processes, when issued, must be served, and it is the mode of service of the process that is involved here, not the power to issue it.

The binding effect of the decree of July 11, 1911, adjudicating the waters of Sun River is not questioned in this proceeding. It may be enforced in any county in the state, but the enforcement thereof is an act that, according to the general rule, must be performed by some executive officer duly authorized by statute to enforce process at the place of enforcement. If a mortgage be foreclosed on land lying in two counties, a transcript of the judgment must be filed in the county outside the county where the judgment was obtained, and execution

of the judgment had by process enforced by the executive officers of that county.

This court, speaking through Chief Justice Brantly, in *State ex rel. Mannix* v. *District Court,* 51 Mont. 310, 152 Pac. 753, 755, said: " 'The judicial powers of the district judge for each district are committed to one chosen person, with the provision that "any judge of the district court may hold court for any other district judge." Under that provision it is clear that any district judge may go into another district and hold court for another judge. It is equally clear, also, that without a provision of law authorizing it, a district judge would not have authority to go into another district and exercise his judicial functions. The jurisdiction must be conferred by law.' Primarily, though he is classed as a state officer, he is such only for the purpose of administering justice in his own district. And, though the process of his court extends to all parts of the state (Const., Art. VIII, sec. 11), ordinarily the exercise of his power is limited to the territorial boundaries of his district." This decision holds that "without a provision of law authorizing it," the judge would have no power to go into another district and exercise his judicial functions. If he may not go into another district and appoint a water commissioner to enforce his processes, it is not logical to hold that he may appoint one in his own district to enforce his processes in another.

The decisions cited from Colorado courts have no application here, for the reason that water districts are created by statutes in that state, the boundaries of each district described, and some judge in each district is vested by statute with jurisdiction to adjudicate all water rights in his district and appoint the commissioner. In other words, the Colorado statutes make water rights a state matter, while under ours it is a matter of determination under general water right laws.

It was further said in the *Mannix Case,* supra, that "a judge cannot act officially in another district, except when requested by proper authority to do so; and the power with which he thereby becomes vested, except as hereafter noted, continues

only while he is actively engaged in exercising his judicial functions *pro tempore.*"

Section 508 of Mechem's Public Office and Officers says: "The authority of public officers, being derived from the law, it necessarily follows that the authority cannot exist in places where that law has no effect. The authority of all public officers is, therefore, limited and confined to that territory over which the law, by virtue of which they claim, has sovereign force. But not only this, for public officers in general, and particularly those chosen within and for the lesser municipal subdivisions such as counties, towns and cities, are elected or appointed such in and for some specified district or territory as such county, town or city, and, unless greater authority is expressly conferred upon them, it is the general rule that their official authority is limited to the district within and for which they were chosen. Thus a state officer can exercise no official authority beyond the confines of the state. So, without express authority, a sheriff cannot execute civil process beyond the limits of his county; a justice of the peace cannot hold court or exercise judicial functions or take acknowledgments outside of the county within and for which he was elected; a constable is not vested with official character when acting in a county to which he does not belong; a United States Marshal cannot execute process beyond his district." Section 511: "Express grants of power to public officers are usually subjected to a strict interpretation, and will be construed as conferring those powers only which are expressly imposed or necessarily implied." This, I think, is fundamental, and unless, as I have said before, power to execute process outside of jurisdiction is clearly granted by our Constitution or statutes, it does not exist.

Not many recent decisions are found in the books bearing directly upon the question. One, it seems to me, must inevitably conclude from reading the authorities that the rule is too well established to the effect that the process server must come from his county under our system of serving process, to admit of doubt.

In *Whitehead* v. *Collingwood*, 220 Mich. 504, 190 N. W. 239, in speaking of the statutes of that state, it is said: "No express provision will be found authorizing service outside the county in which the writ issues. * * * While the jurisdiction of circuit courts is general over the subject-matter here involved, in respect to persons and property it cannot be exercised beyond the limits of the county, except in cases where special provision is made therefor. (*Turrill* v. *Walker*, 4 Mich. 177, 180.) Civil process may be served by any competent person, except where seizure of person or property is commanded therein. A sheriff is a county officer, and has no jurisdiction to serve process outside the limits of his county, unless specially authorized to do so. The fact that special authorization is conferred in certain cases tends to negative the claim that such authority exists in other cases. The rule is thus stated: 'The sheriff being a county officer, his authority extends over the entire county; and as a general rule his authority is limited to his own county.' (35 Cyc. 1528.) 'An officer has no right to make an arrest under civil process beyond the limits either of his own jurisdiction, or those of the officer or court issuing the process, except on fresh pursuit after an escape.' " (5 C. J. 507; see, also, *In re Baum*, 61 Kan. 117, 58 Pac. 958; *Ahlrep* v. *Hughes, Sheriff*, 18 Wyo. 51, 102 Pac. 659, Ann. Cas. 1912B, 1375; *Baker* v. *Casey*, 19 Mich. 220.)

In *Sossamon* v. *Cruse*, 133 N. C. 470, 45 S. E. 757, it was held in substance that, unless made a statutory exception, even fresh pursuit will not justify a peace officer in making an arrest beyond his bailiwick.

In the action at bar it is contended that the water commissioner has the same powers of arrest as sheriffs and constables, who, under our statute (sec. 7143, Rev. Codes), must be appointed by the district court of Cascade county, which court made the decree adjudicating the waters of Sun River. If such commissioner, appointed by the district court of Cascade county, has the power of arrest in Lewis and Clark county in enforcing the decree of the Cascade county district court, it is a clear exception to the powers of sheriffs and constables and

all other peace officers, and should not be left to any alleged statutory power which must be held to exist, if at all, by implied construction of the statute, but should be specially granted in explicit terms. Such implied power out of jurisdiction is so clearly a departure from traditional American government that it should not be recognized by courts, except upon an absolute and emphatic grant by legislative Act. It is by just such infringements upon old, established and well-grounded theories and practices that vital and well-established rules and principles are invaded and broken down, and courts should be the last to give countenance and effect to such departures from the general rule by enlarging the implied powers of any officer.

Rehearing denied September 27, 1938.