VINEYARD LAND & STOCK CO. et al. v. TWIN FALLS OAKLEY LAND & WATER CO. et al.

(Circuit Court of Appeals, Ninth Circuit. August 6, 1917.)

No. 2886.

1. WATERS AND WATER COURSES ☞247(1)—PRIOR APPROPRIATION—EVIDENCE —SUFFICIENCY.

In a suit to determine the rights to the waters of an interstate stream claimed under the Carey Act (Act Aug. 18, 1894, c. 301, § 4, 28 Stat. 422 [Comp. St. 1916, § 4685]), evidence *held* sufficient to establish the older rights in plaintiffs.

2. STIPULATIONS ☞14(1)—CONSTRUCTION—WATER RIGHTS.

A stipulation by defendant that "we are the owners of whatever rights we have on our side, and that you are the owners of whatever rights those people [referring to the early-day settlers] may have had on your side," was not a waiver of primary proofs showing acquirements of the rights of plaintiffs' predecessors to use the waters of the stream.

3. WATERS AND WATER COURSES ☞240—APPROPRIATION—RIGHTS OF SUCCES-SORS.

Defendants would be precluded by prior appropriations of water from the stream by plaintiffs' predecessors adequately established by the evidence.

4. APPEAL AND ERROR ☞1008(1)—FINDINGS OF TRIAL COURT—REVIEW.

An appellate court will not disturb the findings of the trial court on questions of fact unless it be made to appear that the latter court is clearly in error in its conclusions.

5. WATERS AND WATER COURSES ☞254—DUTY OF WATER—DETERMINATION.

Defendants could not complain that the duty of water was not measured by the old flooding system, they not being entitled to more water than they were able to apply to a reasonable and economical use.

6. WATERS AND WATER COURSES ☞240—PRIOR APPROPRIATION—AMOUNT.

Whoever is first in time is entitled to sufficient water from a public stream for his reasonable needs.

7. WATERS AND WATER COURSES ☞254—APPROPRIATION—ALLOWANCE—SUF-FICIENCY.

In a suit to determine conflicting rights to the waters of a public stream, an allowance to defendant of three acre-feet per acre for hay and grain lands, and two acre-feet for grazing lands, *held* amply sufficient for defendants' needs, considering the acreage subject to irrigation and the dates of the appropriations.

8. WATERS AND WATER COURSES ☞247(1)—APPROPRIATION—ALLOWANCE—SUFFICIENCY.

In a suit between defendant stock company and plaintiff, who had entered upon a project under the Carey Act of Congress (Act Aug. 18, 1894, c. 301, § 4, 28 Stat. 422 [Comp. St. 1916, § 4685]), for impounding waters from a public stream for distribution to users, an award to plaintiff of 2¾ acre-feet per acre of the land under the project *held* reasonable.

9. WATERS AND WATER COURSES ☞247(1)—UNITED STATES DISTRICT COURT— WATER RIGHTS—JURISDICTION.

The suit being for the purpose of quieting plaintiffs' water rights in Idaho, the court was without jurisdiction to settle water rights in Nevada.

10. WATERS AND WATER COURSES ☞247(1)—DEFECTS OF PARTIES DEFENDANT.

Where no complaint is made that others than defendants are attempting to interfere with plaintiffs' water rights within the court's jurisdiction, there was no defect of parties defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. CORPORATIONS ☞506—PARTIES—DEFENDANTS.

> The owner of a large proportion of the stock of defendant land company, in a position to control its action, was a proper party defendant to a suit against the land company.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the Twin Falls Oakley Land & Water Company, a corporation, and another, against the Vineyard Land & Stock Company, a corporation, and another. From the decree, defendants appeal. Affirmed.

Frank K. Nebeker, of Salt Lake City, Utah, C. A. Boyd, of Ogden, Utah, Edwin Snow, of Boise, Idaho, and C. B. Henderson, of Elko, Nev. (Howat, Marshall, McMillan & Nebeker, of Salt Lake City, Utah, of counsel), for appellants.

Samuel H. Hays and P. B. Carter, both of Boise, Idaho, for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. The defendants below are appealing. The Land & Water Company heretofore entered upon a project, under the Carey Act of Congress (Act Aug. 18, 1894, c. 301, § 4, 28 Stat. 422 [Comp. St. 1916, § 4685]), for acquiring and impounding water from Goose creek and its tributaries, and distributing it to users. Goose creek takes its rise in the state of Nevada, and crosses the state line into Idaho, and by the project the water is impounded in the latter state. In support of their water rights, the plaintiffs claim that they purchased certain rights from various users of the waters of Goose creek, which they assert are prior and superior to the rights of all other persons taking water from the stream; also that they acquired the right to the use of 500 second-feet under permit from the state, of date March 27, 1908, and an additional amount of 1,000 second-feet under permit of date March 10, 1909, which rights are prior and superior to all rights acquired subsequently to the respective dates of their appropriations.

The defendant Vineyard Land & Stock Company, by its answer, claims, on the other hand, that, long prior to any such appropriations of water from Goose creek or its tributaries, its predecessors in interest appropriated water therefrom for the irrigation of approximately 2,000 acres, with a diversion of about 40 second-feet, and that at the present time it has under irrigation about 4,000 acres, with a diversion of approximately 80 second-feet.

This presents the issues of fact. The questions of law are much the same as were in controversy in the case of Vineyard Land & Stock Co., Appellant, v. Twin Falls Salmon River Land & Water Co. and Salmon River Canal Co., Limited, Appellees, 245 Fed. 9, —— C. C. A. ——, No. 2885 on this docket, decided contemporaneously with this case. One additional question is presented here by an amendment to the answer, namely, that there is a defect of parties, in that there are numer-

ous persons in Nevada, Utah, and Idaho who have, or claim to have, rights and interests in and to the waters of Goose creek and its tributaries, who are not made parties defendant to this suit.

[1, 2] The first question for discussion is brought into the record by the contention of counsel for defendants that plaintiffs have not established the older rights to the waters of Goose creek, being such rights as are claimed by them as of prior origin to those claimed under permits from the state of Idaho. It is asserted, in effect, that plaintiffs' case as to these rights is wanting in primary proofs of the acquirement thereof by the early settlers to whom the plaintiffs claim to be the successors. Counsel for appellees seem to think that the necessity of such proofs was waived by stipulation of opposing counsel, and cite the statement of Mr. Boyd, as follows:

"In other words, that we are the owners of whatever rights we have on our side, and that you are the owners of whatever rights those people [referring to the early-day settlers] may have had on your side."

We do not understand that this stipulation is a waiver of such primary proofs. But, considering the nature of the rights to be established and the great lapse of time that has intervened, we are satisfied that the proofs made are quite sufficient upon which to deduce their acquirement by the early-day settlers. Certain decrees of the District Court of the Third Judicial District of the Territory of Idaho, two in number, were offered and received in evidence. The first of these bears date September 10, 1886, and the second March 19, 1892. These decrees purport to settle certain water rights between the parties litigant, there being a large number of them. These water rights are the same as the early-day settlers are supposed to have acquired by diversion from Goose creek. The defendants in this case were not parties to either of such causes.

Benjamin Howells, who was produced as a witness for plaintiffs, relates that he first went to the vicinity of Oakley in 1878, and was there in 1880, 1881, and 1888, and distributed the waters of Goose creek as watermaster. Referring to a map (Plaintiffs' Exhibit 12), he was able to recognize the several canals and ditches taken out of Goose creek, and to locate the lands upon which the water was used. He says:

"In 1888 I distributed the waters on Goose creek over most all of the country shown in green on Plaintiffs' Exhibit 12. I would approximate the acreage at 6,000 to 6,500 acres; perhaps not all irrigated that year, but as much as could be with the supply of water we had."

Then he goes on to state the number of acres irrigated in 1878, 1879, 1880, and so on. He says, further:

"People were coming into the country and developing it, in small tracts at first, and then increasing, and along as the settlement grew older more people came in. * * * The waters of Goose creek and its tributaries were used by these farmers from year to year. In 1888 and subsequent years many of the ditches were able to carry much more water than we had for them. * * * There was about 6,500 acres effectively cultivated. * * * Prior to the construction of the reservoir system the people began irrigation as soon as possible in order to get their hay lands, alfalfa lands, and so on irrigated up as early as possible in the spring."

The testimony of the witness Sol. Worthington has an important bearing upon the same subject.

By the decrees one is enabled to ascertain the names of the users, where diversion was made, and the amount of water claimed, so that but little remains to conjecture. When we consider that water rights are acquired by diversion and use, here is ample evidence of diversion and use which continued for a considerable space of time, and, while there is no one to say that he on such a date opened a ditch, and took out a certain quantity of water, and applied it to a certain tract of arid land for producing crops, the fact does appear, to the satisfaction of any candid mind, that the water was diverted by settlers and devoted to a useful purpose, and these settlers claimed water rights by reason thereof, and plaintiffs are their successors in right and interest. The decrees make that specific which otherwise would remain indefinite and uncertain.

[3] True, defendants were not parties to the suits giving rise to these decrees, and are not precluded by their findings; yet they are precluded by the appropriations of these early-day settlers, which we hold to be adequately established by the evidence alluded to, considered with such other evidence in the case as bears upon the subject.

It is further insisted that the court erred in its findings touching the quantities of water granted in pursuance of these early settlers' rights, and the dates of the inception of such rights. The evidence respecting these matters is voluminous, and a discussion of it in detail cannot well be embodied in an opinion of reasonable length. Suffice it to say, therefore, that we have carefully examined the whole of such testimony, and fully concur in the findings of the trial court. The same conclusion has been reached as to the quantities of water awarded the defendant Vineyard Land & Stock Company, and the dates of the inception of the rights to which they pertain.

[4] An appellate court will not disturb the findings of the trial court on questions of fact unless it be made to appear that the latter court is clearly in error in its conclusions. Not only is there no such error apparent here, but we quite agree that the trial court's findings are wholly sustained by the testimony.

[5-7] Much is said about the duty of water. The lower court has awarded to the plaintiffs 2¾ acre-feet per acre of the lands under their project, and to the defendant Vineyard Land & Stock Company at the rate of 3 acre-feet per acre for its hay and grain lands, and 2 acre-feet for its grazing lands. Much testimony has been adduced also, not a little of it of a scientific nature, on this subject, which it would require much space in the opinion to analyze. The Land & Stock Company insists that the duty of water should still be measured by the old method of irrigation of pasture and the native grasses for the production of hay, which was by the flooding system, that allowed the water to cover the surface of the soil, and actually to remain thereon for considerable periods of time. This method is being disapproved of in more recent years as wasteful and not an economical use. No person is entitled to more water than he is able to apply to a reasonable and economical use. True, it may be that good results are obtainable

from the former method, but that does not augur that just as good results may not be secured by a much more moderate use, which would leave a large quantity of water for others, who need it as much as the Land & Stock Company. Whoever is first in time, however, is entitled to sufficient for his reasonable needs. We are impressed that the award made this defendant is amply sufficient for its needs, considering the acreage subject to irrigation and the dates of its several appropriations. In the Twin Falls Salmon River Case, 245 Fed. 9, —— C. C. A. —— (No. 2885), which we are deciding with this, we are approving an award of 3 acre-feet for the irrigation of hay and grain land, and 1½ acre-feet for pasture lands, and, for a further discussion of the subject, reference is made thereto.

[8] Defendant Land & Stock Company also excepts to the allowance by the court to plaintiffs of any quantity of water in excess of 30,000 acre-feet, upon the basis that there were under irrigation in 1915 but 20,000 acres, and that the duty of water for this acreage is 1½ acre-feet per acre as prescribed by the new plan of the Twin Falls Oakley project. Defendants also complain of the allowance to plaintiffs at the rate of 2¾ acre-feet per acre in view of the duty of water assigned under the new plan. Account must be taken of the fact that the 1½ acre-feet under the new plan is to be delivered at a point within one half-mile of the place of intended use, which, of course, leaves out of view seepage from the reservoir and canals, and evaporation. Inquiry relative to this latter subject, plaintiffs' counsel say, was not gone into because of the "obvious insufficiency of the water supply to cover the entire tract for which the works were built." The fact appears from the record that the total discharge from Goose creek and its tributaries into the reservoir was: For 1911, 49,170 acre-feet; for 1912, 74,000 acre-feet; for 1913, 50,915 acre-feet; for 1914, 64,740 acre-feet.

All this water was regularly used on the area which was then in cultivation under the project. So that no water has been allowed to go to waste, and there has at no time been any surplus water which the Land & Stock Company would be entitled to for use by reason of its deferred appropriation.

The plaintiffs' project contemplates the irrigation of 50,000 acres, and they are entitled to their appropriations sufficient for the purpose. The court, however, has dealt with a theory, and not a condition, and this presumably because of the fact that all the waters of Goose creek and its tributaries were being employed for a useful purpose. Nor can it be anticipated that the quantity to be had from the source specified will ever be sufficient to supply the reasonable needs of plaintiffs under their project, even at the rate of 1½ acre-feet to the acre. But, as we say in case No. 2885:

"Under a project like this, ten years is allowed within which to make the diversion and proof thereof for a beneficial use. The appropriation is contingent upon the use, of course, but in the larger projects the appropriation speaks as of the date of the license, though, if not applied to a beneficial use within ten years, it lapses. In the meantime no one will be deprived of the use of the water not reduced to a beneficial use under the project."

See Idaho Sess. Laws 1915, p. 216.

We find no reason for modifying the decree in pursuance of the exception.

The next error assigned is in respect to the provisions of the decree "intended to operate upon property and rights and to regulate the internal affairs of appellant in a foreign state." This subject has been fully treated of in·case No. 2885, and what is said there has pertinent application here.

[9, 10] The question pertaining to interstate waters is also disposed of in case No. 2885. This has direct bearing on the controversy presented by the amendment to the answer, that there is a defect of parties. The purpose of the suit is to quiet title to plaintiffs' water rights in Idaho. The court is without jurisdiction to settle water rights in Nevada. No complaint is made that parties other than the defendants are attempting to interfere with plaintiffs' acquired water rights in Idaho, and there can be no cause for injunction against others than the defendants until attempted interference is shown. If there are any others who have rights superior to plaintiffs' not parties to the suit, of course their rights cannot be precluded by the decree herein. They may yet assert such rights, but they are not necessary parties to this suit, not having attempted to assert them to the impairment of plaintiffs' contention.

[11] Another assignment is that the cause should be dismissed as to the Utah Construction Company. It appears that such company is the owner of a large proportion of the stock of the Land & Stock Company, and is in a position to control its action, and might attempt to do so. For this reason, it is at least a proper party to the suit.

Decree affirmed.