**BROOKS et al. v. UNITED STATES et al.**

No. 9544.

Circuit Court of Appeals, Ninth Circuit.

March 10, 1941.

638

M. C. Mechem and A. T. Hannett, both of Albuquerque, N. M. (H. Vearle Payne and L. P. McHalffey, both of Lordsburg, N. M., of counsel), for appellants.

Norman M. Littell, Asst. Atty. Gen., Frank E. Flynn, U. S. Atty., and H. S. McCluskey, both of Phoenix, Ariz., and Vernon L. Wilkinson and Robert Koerner, Attys. Dept. of Justice, both of Washington, D. C. (Geraint Humpherys, Dist. Counsel, U. S. Indian Field Service, of Los Angeles, Cal., and John C. Gung'l, of Tucson, Ariz., of counsel), for appellees.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order adjudicating the appellants guilty of contempt of court. The appellants, New Mexico water users of the waters of the Gila River, were charged with having violated the injunctive feature of a decree of the United States District Court for the District of Arizona affecting and defining the water rights of the United States and of the several defendants in the waters of Gila River in Arizona and New Mexico. The facts are not in dispute. The main defense presented by the appellants was the assertion that the court had no jurisdiction to make its decree with relation to the rights of the appellants to the waters of the Gila River in New Mexico.

The Gila River rises in New Mexico and flows west through Arizona to its junction with the Colorado River at Yuma, Arizona.

The decree involved was the same one considered by this court in the case of Gila Valley v. United States, 9 Cir., 118 F.2d 507, filed March 10, 1941.

The appellants are all parties defendant in the litigation brought by the United States to settle the water rights in the waters of Gila River. They submitted themselves to the jurisdiction of the United States District Court for the district of Arizona and joined in a stipulation with all the other parties for the entry of the specific decree, which they now attack.

The appellants were all owners of land in New Mexico irrigated by the waters of the Gila River, claiming water rights in the Gila River within the state of New Mexico, in excess of the waters decreed to them by the consent decree. They claim that the United States District Court for the District of Arizona had no right to consider or determine the rights of the appellants in the waters of the Gila River in New Mexico, although the amount of the water the appellants use from the Gila River necessarily affects the amount available for the water users within the state of Arizona because of the scarcity of water in the stream.

Without going into detail as to the terms of the decree it is sufficient for the purposes of this case to say that it determines the rights of all the water users in and to the waters of the Gila River within the state of New Mexico and within the state of Arizona with great detail and enjoins each of the parties from interfering with the water rights of the other parties to the decree, as therein determined.

The question with relation to the power of a United States District Court and of a state court within one state to consider or determine the rights of water users in another state in the same interstate stream, is one fraught with great difficulty inherent in the nature of the rights in flowing water.

Enough authoritative decisions have been rendered upon that subject to make it unnecessary to again reason from the elementary principles with relation to the rights of a court to proceed in rem and in personam in relation to such rights in interstate streams.

■ It is uniformly held that an action to determine such rights is not a transitory action. Consequently a court would be limited ordinarily to the determination of such water rights and only such rights as are located within its territorial jurisdiction. The difficulty in applying the ordinary rule as to jurisdiction is that the determination of water rights in the case of an interstate stream would often be entirely inconclusive and might be wholly futile unless the amount of water which should enter the state is also fixed and determined. If all the water is diverted from the stream in the upper state the right to the waters of the stream in the lower state might be entirely destroyed. This situation is peculiarly difficult in the case of streams whose waters are almost completely exhausted for purposes of irrigation. In order for the Arizona court to exercise its unquestioned power to settle effectively Arizona water rights in the Gila River, it must also reach out and consider the amount of water which should rightly be in the stream when it enters the state of Arizona. It must, therefore, consider the question of the rights of upper owners to remove, divert or impound the waters in the upper state.

■ In addition to other jurisdictional difficulties it should be added that in the case of an interstate stream the states themselves have certain inherent and sovereign rights which should be regarded in determining the rights to its waters. The Supreme Court is the only authority set up to make such determination as between the states. Wyoming v. Colorado, 259 U.S. 419, 42 S.Ct. 552, 66 L.Ed. 999; Id., 260 U.S. 1, 43 S.Ct. 2, 66 L.Ed. 1026; Id., 298 U.S. 573, 56 S.Ct. 912, 80 L.Ed. 1339.

This court pioneered in such questions in the case of the Walker River, which rises in California and flows into Nevada; Rickey Land & Cattle Co. v. Miller & Lux, 9 Cir., 152 F. 11, and Miller & Lux v. Rickey, C.C., 146 F. 574; in the case of Sage Creek, which rises in Montana and flows into Wyoming, Bean v. Morris, 9 Cir., 159 F. 651; in the case of Salmon River, which rises in Nevada and flows into Idaho,

Vineyard Land & Stock Co. v. Twin Falls, etc., 9 Cir., 245 F. 9; see also, Utah Construction Co. v. Salmon River Canal Co., 9 Cir., 85 F.2d 769; and in the case of the Colorado River, which flows from California into Mexico, The Salton Sea Cases, 9 Cir., 172 F. 792, 820.

■ Our decision in the Walker River case, supra, was affirmed by the Supreme Court, Rickey Land & Cattle Co. v. Miller & Lux, 218 U.S. 258, 31 S.Ct. 11, 54 L.Ed. 1032. The Supreme Court held that the United States District Court for Nevada had jurisdiction not only to declare the respective rights of the water users within the state of Nevada, but also as a necessary incident thereto to determine the rights of the upper water users in the state of California, in so far as such determination was a necessary supplement to the determination of the rights of water users in Nevada. If we are correct in this interpretation of the decision of the Supreme Court, which has not since been modified, it is determinative of the main issue involved in this appeal. For that reason the parties have devoted much of the briefs and argument to an analysis and interpretation of that decision. To appreciate the full significance of the decision of the Supreme Court in the Walker River case, supra, it is necessary to consider the situation with relation to the claims and counterclaims of the parties therein which are not fully disclosed on the face of the decision of the Supreme Court but are manifest by a consideration of our decision in 152 F. 11, supra, which was reviewed by the Supreme Court, wherein the facts are more fully stated. Miller and Lux, a corporation owning lands in the state of Nevada, and claiming the right to use the waters of the Walker River within said state, brought an action against Rickey, owning lands in the state of California and claiming water rights in the Walker River appurtenant to those lands, and certain other defendants, to enjoin interference with the flow of the Walker River in amount necessary to supply the wants of the lands of Miller and Lux in the state of Nevada. After the suit was brought by Miller and Lux in the United States District Court for the District of Nevada, Rickey transferred his land and water rights in California to the Rickey Land & Cattle Company which had been organized after the institution of the suit in Nevada. This company then brought a suit against Miller and Lux in the state courts of Cali-

fornia to quiet its title to the same water rights in California derived from Rickey. After the California suit was instituted, a co-defendant of Rickey in the Nevada suit, an owner of land in Nevada claiming a right to use the water of Walker River on his Nevada land, filed a cross bill to enjoin both Rickey and the Rickey Land & Cattle Company from diverting water from Walker River in the state of California which was essential to supply the water which he was entitled to use in Nevada in accordance with his alleged rights.

Miller and Lux applied to the United States District Court for Nevada in the suit then pending for an injunction to prohibit the Rickey Land & Cattle Company from proceeding with the litigation in California thereafter begun. The decision depended upon the jurisdiction of the federal court in Nevada to determine the questions involved in the state court in California and, also, its right to exercise exclusive jurisdiction so to do in view of the prior action therein instituted. The court, reasoning from analogy from jurisdiction over proceedings in rem held that the Nevada court, having first secured jurisdiction of the res, had exclusive jurisdiction to determine the controversy between the parties in California as well as in Nevada.

With reference to the cross complaint of Rickey's co-defendant, it will be observed that while the case brought in the District Court of Nevada, for the determination of the rights of Miller and Lux and of Rickey in Nevada and California preceded the suit brought by Rickey Land & Cattle Company in the California state court to determine such rights in California, the cross-complaint in intervention of the co-defendant of Rickey against him in the Nevada action to adjudicate water rights in California was filed after the institution of the California suit and that, consequently, under the principles laid down in the decision the California state court would have exclusive jurisdiction to pass upon the water rights of the parties to the litigation between Rickey and his co-defendant as against the Nevada court in a suit subsequently commenced therein. However, the Supreme Court held that if it was necessary in order to determine the relative rights of Miller and Lux, plaintiffs, and Rickey Land & Cattle Company, defendant, also to determine the rights of the cross-complainant and cross-defendant, as well might be the case, then the Nevada court also had exclusive jurisdiction of that supplemental litigation, although the cross-complaint was filed later than the complaint in the California court. The importance of the portion of the decision of the Supreme Court dealing with the parties to the cross-complaint is that it emphasizes in unmistakable terms the power of the Nevada court to deal with the right to divert water in California by asserting such jurisdiction to be exclusive of the California courts where the determination of these rights was a necessary incident to the determination of the water rights in Nevada asserted by the plaintiff in the main case.

At this juncture it should be noted that in the decree of the Arizona court under attack in the case at bar we are not dealing with an attempt to exercise exclusive jurisdiction by preventing recourse to the courts of New Mexico but merely with the power of the court in Arizona, concurrent as it may be, to act where all the parties are before it and are consenting to a decree therein with relation to both Arizona and New Mexico water users. Thus in effect, it was assumed and agreed by the parties to the Arizona decree that the determination of the water rights of the defendants in New Mexico as between the New Mexican users themselves and as between them and the lower users in Arizona was so essential to the determination of the rights of the water users in Arizona as also to require a determination thereof as an incident thereto.

The decree is given more in detail in Gila River v. United States, supra, to which we refer for a more full description of the Arizona decree. It is sufficient for our present purposes to say that it appears therefrom that the rights of the upper valley water users from the Gila River in New Mexico are made expressly dependent in a measure upon the amount of water impounded in the San Carlos Reservoir in Arizona. If it is possible for the United States District Court sitting in a state lower on the stream to adjudicate the water rights of the upper users from the same stream in another state above, because necessary to a decision of the rights of the lower water users, then this case comes clearly within such jurisdiction. As we have shown, the decision of the Supreme Court in Rickey Land & Cattle Co. v. Miller & Lux, 218 U.S. 258, 31 S.Ct. 11, 54 L. Ed. 1032, supra, expressly holds that the United States District Court in the lower

state has this power: that the jurisdiction is concurrent with that of the upper state, and that as an incident thereto the court in the lower state first securing jurisdiction had power to prevent the parties thereto from litigating their rights in either a state or federal court in any action subsequently commenced in the upper state. While, for the reasons stated, we regard the decision of the United States Supreme Court in Rickey Land & Cattle Co. v. Miller & Lux, supra, as decisive of the question of jurisdiction raised by the appellants, we will next consider some of the other decisions dealing with the jurisdictional question which are cited by the parties in their briefs and argument.

In Vineyard Land & Stock Co. v. Twin Falls S.R.L. & W. Co., 9 Cir., 245 F. 9, an action was brought in the state of Idaho to adjudicate the rights of the water users on that stream in both Idaho and Nevada. This court, speaking through District Judge Wolverton, held that the United States District Court for Idaho had power to proceed in personam to restrict the defendants' use of the water of the Salmon River in Nevada to a certain described area of land in the state of Nevada where a change in the location of the use of the water diverted might result in a greater burden upon the stream by reason of the fact that the water would not return to the stream by percolation. An examination of the decree affirmed by this court in Vineyard, etc., v. Twin Falls, supra, shows that the rights of the defendant in and to the use of waters in Nevada were determined in the Idaho decree to be 12,580 acre feet to be used only upon the lands specifically described and theretofore supplied, whereon, by percolation, all but 4,000 acre feet were returned to the stream for the use of the irrigators in the state of Idaho. 245 F. 9, 27, 28.

The rights of the same parties (Vineyard Land & Stock Co. v. Twin Falls S.R.L. & W. Co., supra) in Goose Creek, which rises in Nevada and crosses into Idaho, were involved in another case of the same title, reported in 9 Cir., 245 F. 30. As appears from the transcript in the latter case the United States District Court for Idaho there defined the rights of the Vineyard Land & Stock Company to the use of water in Nevada with substantially as great particularity as is done by the United States District Court for Arizona in the case of the New Mexico water users in the

decree under attack in the case at bar. The court said it was not necessary for all the water users in Nevada to be made parties to the suit in Idaho, because: "The purpose of the suit is to quiet title to plaintiffs' water rights in Idaho. The court is without jurisdiction to settle water rights in Nevada. No complaint is made that parties other than the defendants are attempting to interfere with plaintiffs' acquired water rights in Idaho, and there can be no cause for injunction against others than the defendants until attempted interference is shown." This statement, of course, must be read in the light of the decisions in both cases (245 F. 9, 245 F. 30) in which the decree of the United States District Court in Idaho, defining the water rights of the water users in Nevada was sustained by this court.

In The Salton Sea Cases, 9 Cir., 172 F. 792, this court had to deal with the invasion of the plaintiff's property in California by water diverted by the defendants from the Colorado River in Mexico. This backward flow of water into California was due to the fact that the Salton Sea into which it flowed is below the level of the Gulf of California into which the Colorado River empties. It was held that the United States District Court for the Southern District of California, having acquired jurisdiction of the persons of the defendants had authority to enjoin them from the excessive diversion of water for irrigation in Mexico where such restraint was necessary to prevent such injury to plaintiff's land in California. Thus, the United States District Court in California controlled the use of the diverting dams in Mexico by the defendants. This power to determine the defendant's right to use water in Mexico was ancillary to the power to prevent the invasion of the lands in California by the excessive use of water in Mexico. The court determined that the diversion of water in Mexico should not be excessive because excessive diversion of water would damage the land of the plaintiffs in the lower state. Similarly, if excessive diversion of water from the Gila River in New Mexico would damage the owners of land in Arizona by depriving them of water to which they were entitled such excessive use could be enjoined where the defendants appeared in the United States District Court of Arizona and consented to injunction. The Salton Sea Cases, supra, thus support the decree of the Arizona court un-

der attack. The case of New Jersey v. New York City, 283 U.S. 473, 482, 51 S.Ct. 519, 75 L.Ed. 1176, relied upon by respondents, was an original proceeding before the Supreme Court. The Supreme Court enjoined the deposit of garbage by New York City in the ocean far beyond the three mile limit, and thus beyond the jurisdiction of the United States because the garbage was driven back by wind and ocean currents so that it invaded the premises of the property owners along the New Jersey coast.

While the foregoing authorities indicate that the lower court had power to enter the consent decree under attack, appellants call attention to the decision of the Circuit Court of Appeals for the Tenth Circuit in Albion-Idaho Land Co. v. Naf Irrigation Co., 97 F.2d 439, 444, as indicating a contrary view. That case dealt with the water rights in Clear Creek, arising in Utah, and flowing into Idaho. The appellants quote the following excerpt from that decision as supporting their jurisdictional contention: "A suit to adjudicate water rights is a local action. The Hart decree undertook to adjudicate water rights beyond the jurisdiction of the court and was void on its face."

Judge Phillips, the author of the opinion, cites in support of this statement, our decision in Rickey Land & Cattle Co. v. Miller & Lux, 9 Cir., 152 F. 11, and states that it was affirmed in 218 U.S. 258, 31 S. Ct. 11, 54 L.Ed. 1032. It must be assumed, therefore, that that court did not undertake to lay down any doctrine inconsistent with that announced by the Supreme Court in that case. It should be observed also that the Hart decree above referred to was a decree rendered by a state court in Utah with reference to a stream flowing from Utah into Idaho. The court, therefore, was dealing with the right of the courts of an upper state to decree water rights in a lower state which is the reverse of the situation in the case at bar. In support of the above quoted statement the court cited the case of Conant v. Deep Creek & Curlew Valley Irrig. Co., 23 Utah 627, 66 P. 188, 190, 90 Am.St.Rep. 721, wherein the Utah court dealt with an adjudication by an Idaho court in relation to an interstate stream known as Deep Creek, or Curlew Creek, rising in Idaho and flowing into Box Elder County, Utah. The Supreme Court of Utah, while holding that the Idaho Court was without jurisdiction to quiet the title of water users in Utah as between themselves, recognized that the Idaho courts did have jurisdiction to determine the rights of the Idaho users with respect to those of Utah users as sufficiently appears from the following quotation therefrom: "The Idaho courts, therefore, have ample and complete jurisdiction to protect the rights of respondents [Utah water users] to have the waters which they have appropriated, and which they divert in Utah, flow through the channel of the stream, and to limit and determine the rights of the Idaho appropriators with reference thereto; and by the decree entered in the suit in the district court of Oneida county, Idaho, such rights were fully protected, and may be enforced by proper proceedings in that court. But this rule of law cannot be so extended as to give to the Idaho court jurisdiction to adjudicate and determine the rights, as between themselves, of the several appropriators who divert water from said stream in Utah, and use the same for irrigation upon lands in this state, and to quiet their titles thereto." In order to clarify the above quotation it should be said that the Idaho case therein referred to was instituted by Utah water users to enjoin the interference with their rights to the use of water in Utah by upper appropriators who were diverting water within the state of Idaho.

It should also be said with reference to the decision in Albion-Idaho Land Co. v. Naf Irrig. Co., supra, that the court affirmed the decision of the District Court of the United States for the District of Utah in which the district court dealt with the use of water in both states. The trial court, for the purpose of the decree, had divided the water users in Clear Creek into two divisions, "the upper division comprising the lands of the upper group situated in Utah and the Naf Ranch situated immediately below the Utah-Idaho boundary line, and the lower division comprising the lands of the lower group situated in Idaho." It was found that the land in the upper division constituted about 43% and the lower group 57% of the total lands irrigated from the stream. The court said that the decree adjudged the rights of Phillip Ospital, and the Naf Irrigation Company, Idaho water users, to 83/100 of a second foot, and also provided, "that for the purpose of distributing the waters of Clear Creek the lands irrigated therefrom

shall be divided into two divisions. That the upper division shall comprise all of the lands in the state of Utah and the Naf Ranch and the lower division shall comprise all of the other lands in the state of Idaho." A reference to the opinion for more detail will show that the trial court took jurisdiction over the whole stream and regulated the rights of the water users in Utah as well as in Idaho, much as was done under the decree under attack in the case at bar.

It thus appears that the Circuit Court of Appeals for the Tenth Circuit in that case affirmed a decree similar to that of United States District Court for Arizona dealing with the waters of the Gila River. It is not at variance with the cases we have cited.

The appellants also claim that the state of New Mexico is an indispensable party in the District Court of Arizona in dealing with the water rights of New Mexico water users in the Gila River. In support of that proposition they cite Washington v. Oregon, 297 U.S. 517, 528, 56 S. Ct. 540, 80 L.Ed. 837; New Jersey v. New York, 283 U.S. 336, 51 S.Ct. 478, 75 L.Ed. 1104; Arizona v. California, 298 U.S. 558, 56 S.Ct. 848, 80 L.Ed. 1331; Wyoming v. Colorado, 259 U.S. 419, 42 S.Ct. 552, 66 L. Ed. 999, and Rickey Land & Cattle Co. v. Miller & Lux, 218 U.S. 258, 31 S.Ct. 11, 54 L.Ed. 1032. This argument leads to the conclusion that the Arizona Court could not act at all as to water rights and diversions in New Mexico, because it would not have jurisdiction to entertain an action against a state. It is clear from the decisions cited that the states through which a stream flows have certain sovereign rights with relation thereto which cannot be interfered with by private persons or determined by litigation between such persons. For that very reason it is unnecessary to make the states parties to litigation involving the rights of individuals in interstate streams. It has been held that private litigants cannot question the rights of the states or insist upon joining them in such litigation. Rickey Land & Cattle Co. v. Miller & Lux, 1910, 218 U.S. 258, 31 S. Ct. 11, 54 L.Ed. 1032; Morris v. Bean, C. C.Mont.1906, 146 F. 423, affirmed, Bean v. Morris, 9 Cir., 1908, 159 F. 651, affirmed, 1911, 221 U.S. 485, 31 S.Ct. 703, 55 L.Ed. 821, and in Finney County Water Users' Ass'n v. Graham Ditch Co., D.C.Colo.1924, 1 F.2d 650. The state of New Mexico is

not a party to the decree. It need not be made so. It is not bound by it except as it might be considered in an action between Arizona and New Mexico in the Supreme Court in making an equitable division of the waters of the stream.

The appellants also contend that where the defendants to the original decree have sold their rights in and to land and water in New Mexico, or where they have died and the lands have passed to their successors, the decree as to such successors is a nullity and cannot be enforced and, consequently, it cannot be enforced as to those still living and still owning the land and water rights described in the decree. In support of this proposition appellants quote the following excerpt from the decision of the Supreme Court in Rickey et al. v. Miller & Lux, 218 U.S. 258, 261, 31 S.Ct. 11, 13, 54 L.Ed. 1032, supra: "To affect a purchaser with a suit against his vendor, it is said that at least the res must be within the territorial jurisdiction of the court, in which the suit is brought." Citing, Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65, 23 L.R.A.,N.S., 924, 17 Ann.Cas. 853.

This might seem to be a declaration of law by the court as claimed by appellants herein, but it is apparent from what follows that it is a statement of the contention of the appellant therein which is repudiated by the court. Immediately following the quotation is the following:

"We are of opinion that the petitioner fails to establish the conclusion for which it contends. The alleged rights of Miller & Lux involve a relation between parcels of land that cannot be brought within the same jurisdiction. * * * Full justice cannot be done and anomalous results avoided unless all the rights of the parties before the court in virtue of the jurisdiction previously acquired are taken in hand. To adjust the rights of the parties within the state requires the adjustment of the rights of the others outside of it. * * * We are of opinion, therefore, that there was concurrent jurisdiction in the two courts, and that the substantive issues in the Nevada and California suits were so far the same that the court first seised should proceed to the determination without interference, on the principles now well settled as between the courts of the United States and of the states." Citing, Prout v. Starr, 188 U.S. 537, 544, 23 S.Ct. 398, 47 L.Ed. 584; Ex parte Young, 209 U.S. 123, 161, 162, 28 S.Ct. 441, 52 L.Ed.

714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764. See also, Ahlers v. Thomas, 24 Nev. 407, 56 P. 93, 77 Am.St.Rep. 820; Gale v. Tuolumne Water Co., 169 Cal. 46, 145 P. 532; Allen v. Thomas, Fed.Cas.No.239; State v. Ninth Judicial Dist., 34 Mont. 258, 86 P. 798; People v. El Paso County Dist. Court, 19 Colo. 343, 35 P. 731; Cf., In re Lennon, 166 U.S. 548, 17 S.Ct. 658, 41 L. Ed. 1110; 2, High on Injunctions, 4th Ed., 1440 a; 1, Freeman on Judgments, 5th Ed., p. 965; 32 Corp.Juris, p. 490.

It also will be observed that the California suit involved in Rickey Land & Cattle Co. v. Miller & Lux, supra, had been brought by Rickey and that the Rickey Land & Cattle Company was a corporation to which he had assigned his rights. Notwithstanding the assignment the court held that his successor should be enjoined from proceeding in the California court because of the prior action against him in Nevada.

■ The injunction in the case at bar was not only directed to the individual defendants but to their successors in interest and such successors are guilty of contempt in violating the injunction. The trial court having power to decide the relative rights of the litigants in New Mexico and Arizona, as we hold, was also capable of enforcing its decree against such parties and their successors whether or not the decree be regarded as one strictly or quasi in rem or in personam as to them.

Appellants also claim that the Arizona decree is void as to them because it operates directly on rivers and canals in New Mexico, citing our decision in Vineyard Land & Stock Co. v. Twin Falls S. R. L. & W. Co., 245 F. 9. That decision, however, as we have already pointed out, specified and determined with great detail the rights of the parties in the waters of the Salmon River and its tributaries in Nevada and in Idaho. All the parties in the litigation were perpetually enjoined "from diverting from the channel of the stream any of the waters from the Salmon River or Salmon Creek or its tributaries in excess of its several rights as the same are hereinbefore defined." [1]

It requires the parties, both plaintiff and defendant, to install measuring devices at the points of diversion to automatically register the amount of water diverted. Such devices were to be subject to inspection of the parties. It prohibited the maintenance of dams in the stream in Nevada or Idaho except to divert water through canals, etc., provided with such measuring devices. The statement of this court in the decision in regard to the power of the federal court in Idaho with reference to dams, etc., in Nevada must be measured with reference to the terms of the decree which was affirmed.

The appellants are distributees of water under the Sunset Ditch Company and receive their water from the canals of that company. That company was charged with contempt and found guilty, but did not appeal. The appellants assign as error the finding that the Sunset Ditch Company "was a corporation at the time the court acquired jurisdiction of this case." The claim is that the company forfeited its franchise for a failure to pay state taxes, ch. 185, Session Laws of New Mexico 1921, and was "dissolved" June 14, 1921. The real purpose is to show that the appellants are not bound by the Arizona decree because of the participation of the Sunset Ditch Company therein. As we hold that they are bound thereby as parties thereto the point is of no importance on this appeal. For the same reason the claim that the Sunset Canal Company is not a corporation, even if true, is equally unimportant.

■ Appellants claim that the court erred in overruling the motion of Parley P. Jones, R. W. Brooks and Rachel Jensen to quash process and service upon them in New Mexico. As they were parties to the original decree the court already had jurisdiction over them. They were only entitled to notice of the charge that they had been guilty of contempt in violating the decree of court. They had such notice and appeared. Leman v. Krentler-Arnold Co., 1932, 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389; Aerovox Corporation v. Concourse Elec. Co., 2 Cir., 90 F.2d 615, 617. There is nothing to the contrary in Robertson v. Railroad Labor Board, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119, cited by the appellants.

■ Appellants claim that the court erred in refusing to permit them to prove that the waters diverted by them from the Gila River would not, if it had not been diverted, benefit any water user in the state of Arizona. They cite in support of this contention Albion-Idaho Land Co. v. Naf

---

[1] Quoted from paragraph 2 of original decree contained in the record in this court. Transcript, p. 337.

Irrig. Co., supra. The answer to this contention is that the court having declared by decree the rights of the lower water users and having entrusted the water master with the duty of diverting the water from the river to all water users and to regulate the amount of water coming to these appellants, they cannot exculpate themselves from the charge of contumacious conduct by claiming the water would have done no good to the owners in Arizona even if they had had it. Cf. Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550.

The appellants contend that the defendants who are parties to the original decree should not be bound by the decree in view of the fact that some of their codefendants have died or sold their property, and that their successors are not bound by the decree and, consequently, the defendants should not be. This argument falls with our decision that the successors in interest are bound by the decree. But it could not be maintained in any event that the defendants who were parties to the decree could be excused for violating it because others not parties thereto are not bound thereby.

■■ Appellants claim that the court erroneously ruled that the burden of proof was upon the defendants to prove they were not guilty of the charges of contempt. This is not correct. The ruling to which reference is made was that in view of the defendants' affidavits admitting the diversion of water in violation of the terms of the decree it was incumbent upon the defendants to produce evidence to purge themselves of contempt. By this ruling the court assumed that the parties had admitted that they had violated the terms of the decree and that they maintained they had a right so to do. At most the ruling complained of merely related to the order of proof. No exception was taken to the ruling. As both parties went forward and introduced their evidence the ruling of the court as to the order of proof, even if erroneous, was not prejudicial.

■■ Appellants claim they were not guilty of disobedience of any lawful order of the court. In that connection they question the validity of the requirement by the Arizona court that each water user pay 13 cents per annum for each acre of land for which the water right is given in the decree as a contribution to the necessary expenses of operating the distributing system set up by the decrees, and that the water commissioner be required to collect this amount and in default of payment thereof he was directed not to deliver water from the Gila River to "any party entitled to divert so long as such diverter remains in default in the payment of any of its share of the said 13 cents per acre", and the parties were enjoined from using any water while in default.

The allegations of the complaint charging the appellants with contempt were that the respondents had failed to pay the assessment for the expenses of the water commissioner as defined by an order of the Arizona court and that the commissioner had thereupon closed the main diverting structures and at various times told the appellants not to appropriate or use any of the waters of the Gila River but, nevertheless, the respondents had appropriated and used such water. The appellants did not deny that they had failed to pay the assessment or that the water commissioner had told them not to appropriate or use any water from the Gila River and admitted that they had continued to use the water of the Gila River without such payment.

The findings of fact are in accordance with these allegations of the complaint. The court found that the diversion ditches were operated by the Sunset Canal Company and the appellants were acting by and through such Canal Company in taking and receiving the water diverted from the Gila River and that they were responsible for the violation of the order of court and were, therefore, guilty of contempt of court. The appellants were diverting the water from the Gila River and in so doing were operating in the name of the Canal Company. The main contention of the appellants, however, relates back to the jurisdiction of the United States District Court for Arizona and to the power of that court to consider and determine water rights in New Mexico and to set up a plan for the distribution of the waters of the Gila River by a water commissioner who acted in both New Mexico and Arizona. We have already disposed of the primary question by holding that the order of the United States District Court was valid and that the state of New Mexico was not a necessary party.

■■ The appellants state in their brief that they offered to prove "that had the decree been enforced as interpreted by Mr. Firth, the water master, as operated by him in former years the result would have been

that all crops and fruit trees of the appellants and other water users under the Gila River would have been destroyed." This proof was correctly held to be immaterial as the need of the appellants did not justify a violation of the decree.

In dealing with the question of contempt it should be further stated that the appellants not only contend that the decree is void as to them but show that certain officers of the state of New Mexico, acting under the direction of the Governor of the state, and at the instance of the appellants who had appealed to the Governor to take action to enforce what they believed to be the rights of the state to control the diversion of water within the limits of the state, had installed measuring devices, had broken the locks placed upon the diversion dams by the water commissioner, and had replaced the same with locks installed by the state officers. The appellants seek to avoid the effect of the acts of the state authorities taken at their instigation by claiming that the state was asserting its sovereign rights in connection with the distribution of the water of the Gila River within the limits of the state.

■■■ It is not necessary for us to attempt to establish the exact measure of the powers of a state over waters within a state. That these rights are limited or modified by the rights of the other water users in another state upon the lower portion of the stream is thoroughly established by decisions hereinabove cited. The state has no right under the federal Constitution to take the property of its own citizens or of the citizens of another state to administer or control it, except by the exercise of its powers of eminent domain, or in the necessary exercise of police power.

The water commissioner appointed by the court at the instance of the appellants, if we regard him as agent of the appellants, as he must be regarded, is clearly entitled to enter the state of New Mexico and to carry on operations of his agency so long as he violates no state statute. If the state in the exercise of the police power has enacted laws to control the manner of the diversion of water it would be his duty to conform to those laws. No such law had been enacted. In support of this statement we cite the discussion of District Judge Knowles, acting as Circuit Judge, in Howell v. Johnson, .C.C., 89 F. 556, 559, concerning the rights of the state in an interstate stream where private rights have accrued.

The fact is that the appellants, as a result of the action of the officers of the state purporting to act for the state, but really acting for them, took more water from the Gila River than they are entitled to under the terms of the decree and used it upon their land with full knowledge that to do so was to violate the decree.

The decisions we have cited concerning the distribution of water from interstate streams for irrigation show that it is both customary and necessary to appoint one officer to administer the stream in both states. This officer acts as an arm of the court within the jurisdiction of the court and may be said to act as agent of the parties to the decree outside the state as well as those within the territorial jurisdiction of the court. Many interesting questions no doubt may arise in connection with the activities of such a water commissioner but it is sufficient for the purposes of this case to say that the appellants, in taking water from the stream through the agency of others, were guilty of contempt of court.

■■■ Appellants contend that "the fine imposed of $100 each on the appellants is for a round sum of money, not based upon any proved item or items of expense, but intended to cover in part probable losses and expense, and is arbitrary, arrived at by conjecture, and that said fine is punitive and not remedial." The only cases cited in support of this doctrine are Christensen Engineering Co. v. Westinghouse Air Brake Co., 2 Cir., 135 F. 774, 782; Norstrom v. Wahl, 7 Cir., 41 F.2d 910-913; Catalin Corp. of America v. Slosse, D.C., 31 F.Supp. 89. These decisions do not sustain the appellants' contention. The true rule is that the matter of the fine is largely a matter of discretion, as stated by the Supreme Court in the following quotation from Toledo Co. v. Computing Co., 261 U.S. 399, 428, 43 S.Ct. 458, 466, 67 L.Ed. 719: "In the latter case, he is obstructing the process of the court in a proceeding in which its action has been properly and lawfully invoked. The degree of punishment for contempt in such case is in the discretion of the court whose dignity has been offended and whose process has been obstructed. New Orleans v. Steamship Co., 20 Wall. 387, 22 L.Ed. 354. Certainly it was not an abuse of discretion in this case to impose as a penalty, compensation for the expenses incurred by the successful

party to the decree in defending its rights in the Ohio court."

In considering the question of the discretion of the trial court in imposing a fine it should be borne in mind that there was a deliberate challenge of the validity of the decree and a consequent violation of the injunction and deliberate failure to pay their portion of the amount of money required to administer the affairs of the water users, and that the appellants took and used water which did not belong to them but belonged to the Arizona water users, which included the United States, and that the water commissioner has been put to very considerable expense by the conduct of the appellants. The respondent shows that the water commissioner has already been put to the expense of $1,596.55 as result of the violation of the injunction.

The last point urged by the appellants as to the validity of the fine imposed by the court is stated thus: "If failure to pay the thirteen cents per acre constitutes contempt, the only relief the trial court could have granted the petitioner was to imprison the respondents until they had paid said thirteen cents per acre." The claim of the appellants is that this was a failure to do an affirmative act required by the court's decree and that the punishment should have been imprisonment until compliance. It is a sufficient answer to this claim to say that the charge of contempt herein is not predicated alone upon the refusal to pay thirteen cents per acre, but upon the appropriation and use of the waters of the stream without making such payment.

We think it clear that there is no abuse of discretion in fixing the amount of fine at $100 for each of the appellants and that the punishment was proper.