**GILA VALLEY IRR. DIST. et al. v. UNITED STATES.**

No. 9527.

Circuit Court of Appeals, Ninth Circuit.

March 10, 1941.

Ralph W. Bilby, T. K. Shoenhair, C. T. Knapp, Jas. P. Boyle, B. G. Thompson, and Arthur Henderson, all of Tucson, Ariz., and

Guy Anderson of Safford, Ariz., for appellants.

Norman M. Littell, Asst. Atty. Gen., Frank E. Flynn, U. S. Atty., and H. S. McCluskey, both of Phoenix, Ariz., and Charles R. Denny and Robert Koerner, Attys., Dept. of Justice, both of Washington, D. C. (Geraint Humpherys, District Counsel, U. S. Indian Field Service, of Los Angeles, Cal., of counsel), for appellee.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order of court sustaining the action of the Water Commissioner in the execution of its decree. The action was brought in 1925 and final decree rendered therein in 1935 in pursuance of a stipulation of the parties expressly agreeing to the terms of the decree which determines and regulates the rights of the water users on the Gila River in New Mexico and Arizona to the natural flow of the River and to the waters stored in the San Carlos Reservoir by the Coolidge Dam situated in the San Carlos Indian Reservation.

The decree provided for the appointment of a water commissioner to distribute the water in accordance with the terms of the decree. It reserved jurisdiction in the trial court to consider applications to review the action of the water commissioner from time to time. The appellants herein, called by the decree "upper valley defendants", being dissatisfied with a ruling of the water commissioner concerning their water rights in the Gila River as fixed by the decree, applied to the court for an order requiring the water commissioner to conform to their interpretation of the decree. The trial court considered the application but upheld the decision of the water commissioner. They appeal from this decision of the court.

The question involved on this appeal is the meaning of the term "stored water", as used in paragraph 8 of the decree.

The action was brought by the United States on its behalf and as trustee for the Indians in the San Carlos and Gila River Indian Reservations. The action was brought against all the canal companies and water users along the River so far as they could be ascertained and all joined in the stipulation adopting the proposed decree. The decree is very long. Before pointing to the exact language of the decree about which this controversy revolves it is necessary to state some of the facts pertaining to the use of the waters of the Gila River.

The Gila River, although a very long stream rising in New Mexico and extending across Arizona, varies greatly from time to time in the amount of water carried therein. The region through which it flows is subject to cloudbursts and heavy floods and the rainy season is limited in extent. The land through which the stream flows is semi-arid or desert land requiring irrigation for successful agricultural or horticultural results.

In 1924, 43 Stat. 475, Congress authorized the building of a dam across the River, known as the Coolidge Dam, in San Carlos Canyon to impound the water of the stream so that it could be utilized without waste. It was proposed that the dam should have a storage capacity of 1,285,000 acre feet, sufficient to irrigate 214,166⅔ acres of land, allowing 6 acre feet per annum for each acre irrigated, which was stipulated and decreed to be the duty of water in that region. It was desired that the decree should not only fix the rights of all parties thereto in and to the natural flow of the stream but also their rights with relation to the stored waters which were to be impounded above the Coolidge Dam. In fixing the water rights theretofore existing it was essential that the order of priority of the rights be determined and set out in the decree for the reason that the flow of water in the river was frequently too small to give to each owner the amount which he would otherwise be entitled to use upon his land. By the terms of the decree the rights of all the water users were fixed at six acre feet per annum for the land designated in the decree with a flow of not exceeding 1/80th of a cubic foot per second for each acre of land entitled to water for irrigation.

The provision of the decree with reference to the upper valley defendants involved herein, is subdivision 2 of article 8 thereof, which is as follows: "(2) That on the first day of January of each calendar year, or as soon thereafter as there is water stored in the San Carlos Reservoir, which is available for release through the gates of the Coolidge Dam for conveyance down the channel of the Gila River and for diversion and use on the lands of the San Carlos Project for the irrigation thereof, then the Water Commissioner, provided for herein, shall, to the extent and within the limitations hereinafter stated, apportion for the ensuing irrigation year to said defendants

from the natural flow of the Gila River an amount of water equal to the above described available storage, and shall permit the diversion of said amount of water from said stream into the canals of said defendants for the irrigation of said upper valleys lands in disregard of the aforesaid prior rights of plaintiff used on lands below said reservoir; the diversion of said amount of water by said defendants to be in accord with the priorities as between themselves stated in said priority schedule and for the irrigation of the lands covered by the rights accredited to said defendants in said priority schedule and the quantity of water permitted to be taken by said defendants in disregard of prior rights of the United States below is in addition to and not exclusive of the rights of said defendants to take from the stream in the regular order of their priorities as shown by the priority schedule, but of course within the duty of the water limitations of this decree; and if and when at any time or from time to time in any year, water shall flow into said reservoir after said date of first apportionment and shall be stored there and become added to the available stored water in said reservoir, the said commissioner shall make further and additional apportionments to said defendants of the natural flow of said stream as the same is available at the diversion points of said defendants, which said apportionments shall in turn correspond with and be equivalent in quantity to the amount of such accessions or newly available stored water supply; that in calculating apportionments of the stored water supply the Water Commissioner shall make appropriate deductions for losses for evaporation, seepage or otherwise that may be suffered between the time of the apportionment and that of the diversion of a corresponding quantity of water from the stream; that such apportionments, corresponding with net accessions during each annual period after first apportionment, shall be made by said Water Commissioner at least as frequently as once per calendar month (provided accessions to stored supply have occurred during that period) and at such more frequent intervals as the conditions in his judgment may demand—his decisions in these regards to be subject to summary review by the court as provided in Article XII hereof—and said Water Commissioner shall see to it that his said apportionments, when made, forthwith shall be placed of record herein and so posted or published as

to inform all interested parties in that regard with reasonable promptness and despatch; it being herein explicitly provided that no apportionment or apportionments, made during any calendar year, shall carry over or be available in any manner for the succeeding year; * * *."

The defendants are satisfied with the decision of the court as to the method of making apportionment on the first day of January of each year. The controversy relates to the subsequent apportionments during the year of the water flowing into and stored in the San Carlos Reservoir. The defendants contend that water in an equivalent amount to all the water flowing into the reservoir after January 1st of each year should be apportioned to them under the decree. The court held that the only water to be apportioned after January 1st is that which is "stored" in the reservoir, and, consequently, that where water is running through the reservoir without being stored therein, that is, when as much water is flowing out of the reservoir at the lower end as is flowing in at the upper end, there is no water "stored" within the meaning of the decree. For, if the entire natural flow of the stream by-passed the waters in the reservoir either by canal skirting the reservoir or by diversion tunnels, or by conduits leading through the reservoir, or if the reservoir was in an adjoining canyon and not in the stream bed, it is clear that the natural flow of the stream passing the reservoir could not by any stretch of the imagination be characterized as water stored in the reservoir. The practical result is the same whether the natural flow of the stream passes through or around the reservoir. The language of the decree dealing with "stored water" and with the "natural flow" of the stream must be construed in the light of these practical considerations. The natural flow of the stream is the amount of water which would flow therein if there was no artificial interference with the flow, consequently, the temporary detention of water while passing through the reservoir is of no significance if the flow above and below is equal to the natural flow. The situation as to the natural flow would be analogous to that in a river flowing through a natural lake.

Appellants argue that in a reservoir several miles in length, such as Coolidge Dam Reservoir, all water reaching the reservoir must be temporarily stored therein notwithstanding the fact that an amount equal

to that entering the reservoir may be at the same time flowing therefrom. Undoubtedly this is true, as a physical fact, but the question we are to determine is as to the meaning of the term "stored water" used in the decree, in view of the fact that there were two entirely different water rights involved in the adjudication; one, the right to the natural flow of the stream, great or small, to be taken from the stream as the water reaches the point of diversion; and, the other, the right to use the water stored in the dam when needed.

While it is difficult to see how any other conclusion should be reached than that of the water commissioner and the trial court, we will now deal specifically with some of the arguments relied upon by the appellants. They point out that the decree with relation to the "apportionment" or estimate of the quantity of stored water and to the diversion and use by them of an equivalent amount states that such use may disregard the priority rights of the United States below the dam as declared in the priority schedule of the decree. It is argued that this provision of the decree means that the rights of the government, although declared to be prior to the rights of these defendants, are entirely subordinated to the rights claimed by the upper valley water users.

We think it clear that this provision with regard to waiver of the priority rights of the government in favor of the upper valley defendants merely means that to the extent that the upper users are using the equivalent of the water already impounded in the dam and thus available for the use of the United States below the dam, that such storage should be relied upon by the United States to satisfy its priority rights to divert water from the natural flow of the stream prior to any diversion whatever by the upper valley users.

Another provision of the decree which is heavily relied upon by the appellants is the recital contained in Sec. 1 of paragraph 8, as follows: " * * * That, however, plaintiff and said defendants, in recognition, of the desirability of making it practicable for said defendants to carry on the irrigation of said upper valley lands to the extent to which the areas to which their said rights apply heretofore have been irrigated and so that the San Carlos Act shall inure in part to their benefit and this suit may be compromised and settled have agreed that the following provisions shall be and they are hereby embodied in the decree. * * *"

It is claimed that this is in effect a provision of the decree that the upper valley water users shall be entitled thereafter to use the waters of the Gila River as they had been theretofore accustomed to use it without regard to the rights of all others in the stream. Such an interpretation of the decree, however, would be a complete negation of the purpose of the entire decree which was to settle and define with certainty the rights of all the parties using or claiming the waters of the Gila River. In pursuance of that avowed purpose the rights of the upper valley defendants are specifically set out in great detail in paragraph 8 immediately after the above recital relied upon by the appellants. We regard this recital as a mere preamble to the actual detailed specification and description of their rights, which includes the apportionment clause (2) of paragraph 8 above set forth.

Other portions of the decree are cited and discussed by the appellants, but their bearing on the question at issue, while not wholly irrelevant, is too slight to require discussion in the light of the impelling reasons we have given for our conclusion.

Appellants' specification of error No. 3 in the brief is as to the rejection of their proffered evidence. The specification refers to the rejection of two exhibits and the proffered testimony of four witnesses. The substance of the rejected evidence is stated in the specification. The objection and ground for the ruling stated therein is the same as to each item of the evidence, namely, that the decree was not so ambiguous as to justify or require extraneous evidence. The enumeration of six errors in one specification violates our important rule in relation to specifications of errors in briefs (Rule 20, sub. 1, in effect July 1938) and, consequently, may be disregarded. Nor do we feel that these alleged errors, although mentioned in the appellants' brief, are seriously pressed. Even so, we have examined the record and agree with the trial court. Even if we assume that the terms of the decree were ambiguous, contrary to our conclusion, evidence of negotiations leading up to the decree would not be admissible, for we are concerned not with the intention of the parties as in the case of a contract between them, but with the intention of the court as expressed in the decree.

Moreover, if there was an error in the ruling it was not shown to be prejudicial for, in case of an ambiguity, the pleadings should be first consulted to resolve the ambiguity. They are not in the record and cannot be consulted although, of course, they were before the trial court when it ruled on the admissibility of this evidence.

Order affirmed.